Trilog Associates, Inc. *v.* Famularo et al.,
Appellants.

Argued April 27, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*C. Clark Hodgson, Jr.*, with him *Stradley, Ronon, Stevens & Young*, for appellants.

*A. H. Wilcox*, for appellee.

OPINION BY MR. JUSTICE MANDERINO, January 24, 1974:

This is an appeal from a decree which permanently enjoined the appellants from engaging in various conduct allegedly in violation of their employment contracts with their former employer, the appellee. The appellants, John D. Famularo, Louis A. Marabella, and Dennis J. Gawrys, were employed in 1967 by the appellee, Trilog Associates, Inc., a corporation engaged in the data processing business. In November of 1969, Gawrys was fired. In April of 1970, Famularo and Marabella simultaneously resigned their employment with Trilog and established their own data processing business under the name of General Data Systems, Ltd. Famularo and Marabella were the principal stockholders and officers of the new business. In June of 1970, Gawrys, who had been fired by Trilog seven months earlier, was hired by General Data Systems, Ltd.

During the time that the appellants worked for Trilog, the Girard Trust Bank of Philadelphia was one of Trilog's clients for whom data processing services were performed involving *shareholders'* records. Famularo, as an employee of Trilog, worked on the Girard Bank project. Marabella did so to a lesser extent. Gawrys did not work on any matters relating to Girard Bank.

In September of 1970, General Data Systems, Ltd., entered into an agreement with the Girard Bank for certain data processing involving *trustees' records*. Shortly thereafter, Trilog filed this action claiming

the appellants were violating restrictions in their employment contracts with Trilog. Injunctive relief was granted.

Essentially the injunction enjoined the appellants from: (1) performing computer related services for the Girard Bank or any other customer of Trilog; (2) disclosing or using any confidential information as to Trilog; (3) inducing present employees of Trilog from terminating their employment; (4) inducing former employees of Trilog to break their restrictive employment covenants; (5) inducing any customer of Trilog to violate its contract with Trilog; (6) interfering with Trilog's business relations; (7) keeping any copies of documents generated within Trilog whether authored by appellants or not and whether obtained as a result of their lawsuit or not. In addition, Famularo was enjoined from developing or exploiting a shareholders' record system.

The findings of fact in the trial court's opinion are basically as follows:

"While in Trilog's employ . . . Famularo and Marabella had constant contact with those officers of the bank who operated the Corporate Trust Department and became familiar with the operation thereof although they *did not at that time work specifically on the trustees' record system.* However, not only were the two systems in the same department of the bank and under the administration of its one set of managing officers but they used the same computer and the same cage where both corporate shares and debt securities were kept. And *there were instances and circumstances where the functions of the two systems overlapped.*

"[W]hile working for Trilog at Girard Trust Bank . . . Famularo and Marabella actually *obtained information* for Trilog *concerning its customer* which . . .

they used . . . as the owners of General Data Systems, Ltd. . . . .

"[T]he employee *acquired the opportunity to compete with his former employer* on the same premises and with the same management . . . *by virtue of the information concerning that customer's needs and methods which he had accumulated while working for his former employer.*

". . . Famularo . . . *sought to oust Trilog* . . . as the contractor engaged *in computerizing and servicing the data processing of Girard's shareholders' record system by proposing, or at least suggesting, a revision in procedures and computer uses.* . . . Famularo . . . produced a plan envisioning the reorganization of the Corporate Trust Department.

. . . .

"While Trilog *had not been employed* by Girard to perform services *for other than that branch* of the activities of its Corporate Trust Department *known as the shareholders' records system* it was actually having *contact* with the problems of the *closely related trustees' records system.* Thereby its employees Famularo and Marabella came to *know of the existence of that system and its relationship in part with the other system,* combined as the two were in the same department under the same management and using the same computer and the same securities cage. The shareholders' records system was staffed by far more employees than the trustees' record system . . . and the physical equipment of the latter, aside from the computer, was smaller and the space occupied by it was less than that of the shareholders' record system. . . . [W]hile the knowledge of . . . Famularo and Marabella . . . *was slight with respect to the trustees' record system,* the possession of such knowledge and of the *considerable amount of information about the Corporate Trust Department* obtained . . . enabled them . . .

to acquire the opportunity to augment it when their company sought and obtained employment by Girard . . . also served as a means of approach to, or entree into the councils of that bank's officers. . . .

". . . [Famularo and Marabella had] knowledge of Girard's man-power methods, needs, management, equipment and procedures, all originally obtained at the bank while they were employed by Trilog . . . .

*"Admittedly the information obtained for Trilog while they were its employees was inconsiderable so far as the trustees' records system is concerned and admittedly it was only after they left Trilog that they acquired the additional data necessary to perform their task in computerizing the trustees' records system."* (Emphasis added.)

The relevant provision in Famularo's contract, which differed from the contract provision of the other two appellants, provided: "[Y]ou are bound to observe Trilog's rights in your work product and Trilog's proprietary and customer information under the common law of unfair competition and . . . it is specifically agreed that you will not, until March 2, 1972, develop or assist in the development or exploitation of any shareholders' record system on your own account or for any other party."

Famularo promised (1) not to engage in unfair competition under the common law and (2) not to develop or assist in the development or exploitation of a shareholders' record system. We conclude that (1) the trial court's findings do not sustain its ultimate conclusion that the first promise was violated and (2) the second promise is void. We shall first discuss Famularo's alleged violation of his promise not to engage in unfair competition. We note that a former employee would have the same obligation under the law of torts even without a contractual provision.

From its findings of fact, the trial court ultimately concluded that Famularo unfairly competed with Trilog by using *confidential* customer information about the Girard Bank which Famularo had acquired while he was a Trilog employee. We do not agree with the trial court's ultimate factual or legal conclusion. Although the trial court's findings of fact which are sustained by the evidence are not reversible on appeal, its conclusions, whether of ultimate fact or law are reviewable and will be reversed if they are not sustained by the trial court's findings of fact. *Van Products Co. v. General Welding & Fabricating Co.,* 419 Pa. 248, 213 A. 2d 769 (1965).

Some of the trial court's findings are irrelevant on the issue of unfair competition. It may be that Famularo's work in the shareholders' record system at Girard gave him "constant contact" and an "entree" to the bank officers. It may be that Famularo would never have had the "opportunity" to perform services for Girard had he not become known at Girard while working for Trilog. Such facts, however, although they may be relevant in considering a covenant not to compete, are not relevant to the issue of unfair competition. *Compare* Restatement of Contracts §§515(a)-(b), 516(f) (1932) (covenant not to compete), *with* Restatement of Torts §§757(b), 759 (1939) (unfair competition).

The trial court had two bases for its finding that Famularo unfairly competed with Trilog: (1) he performed data processing services involving the trustees' record system and (2) he attempted to oust Trilog in its work in the shareholders' record system. As to the first basis for the finding of unfair competition, we point out that Famularo was free to compete and obtain this contract so long as it did not involve the use of *confidential* customer information. *See Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 623,

136 A. 2d 838, 842 (1957). Trilog had a contract with Girard to perform work which was limited to the shareholders' records and never performed any work involving trustees' records. It is difficult to see what *confidential* customer information Famularo could have used in his contract with Girard. Although the trial court ultimately concluded that Famularo used *confidential* information, there are no findings which sustain that conclusion. The trial court did find that the trustees' records and the shareholders' records (1) were in the same department; (2) were related in physical location; (3) had the same officers; (4) differed in the number of employees; (5) used the same cage; and (6) overlapped to a minor extent. None of these findings, however, shed any light on what *confidential* customer information was used by Famularo in his contract with Girard. To the contrary, many key findings of the trial court point to exactly an opposite conclusion. The trial court found that (1) Trilog (and, thus, Famularo) never worked with the trustees' records; (2) Famularo's information was slight as to the trustees' records when he left Trilog; and (3) Famularo only acquired the bulk of his information about the trustees' records after he left Trilog.

*General* information as distinguished from *confidential* information which Famularo may have obtained about Girard is irrelevant. To enjoin use of information, it "must be the particular secrets of the complaining employer, not general secrets of the trade in which he is engaged . . . ." *Macbeth-Evans Glass Co. v. Schnelbach,* 239 Pa. 76, 85, 86 A. 688, 691 (1913). Famularo, even before his employment by Trilog, was an experienced computer programmer and surely knew, as does the general public, that banks use data processing services, have computers, and have Corporate Trust Departments which provide a variety of services. Famularo's use of information about Girard,

which was generally known or readily and easily available to any Trilog competitor, is not unfair competition. *See Van Products Co. v. General Welding & Fabricating Co.,* 419 Pa. 248, 213 A. 2d 769 (1965); *Robinson Electronic Supervisory Co. v. Johnson,* 397 Pa. 268, 154 A. 2d 494 (1959).

The second basis for the trial court's conclusion that Famularo unfairly competed rested on the following two findings: (1) Famularo proposed a revision in the shareholders' record system in an attempt to oust Trilog *"at least as to procedure and computer uses"* and (2) Famularo proposed a reorganization of the entire Corporate Trust Department. These two findings, as other findings of the trial court, are not related to the use of any *confidential* customer information. Neither of these proposals were ever implemented. Even if they had been, no *confidential* information was used by Famularo in these proposals.

Girard's Corporate Trust Department used data processing many years before Trilog or Famularo began any work at Girard. The department had used various computer programs which were developed by its own data processing staff and the department had its own computer. Trilog was hired to develop and improve the data processing system for the shareholders' records. The computer program which Trilog developed was in a "computer language" which could not be used in Girard's own computer, and Girard, therefore, had to lease computer time from Trilog for the shareholders' record system. At the time the unimplemented proposals referred to by the trial court were made, Trilog had completed its initial work on the shareholders' record system and had received substantial compensation. Much of its income from Girard, at the time of the above proposals, involved the leasing of Trilog's computer for the shareholders' record system.

Famularo's proposals could have been made by any experienced computer programmer. The proposal to reorganize the Corporate Trust Department involved the converting of all the computer programs of Girard into the same "computer language" so that Girard would not be required to lease outside computer time and, thus, would fully utilize its own computer. No *confidential* information was used or required. Any intelligent and creative programmer, even if he had never worked at Girard, could have made the same recommendations if he had a minimum of general information about data processing in Girard's Corporate Trust Department. If the proposal had been implemented, Trilog, of course, would have been "ousted" and would no longer have been needed to provide leased computer time. But again, we repeat, Famularo was not barred from competing with Trilog or ousting Trilog from its work with Girard. He was only bound not to unfairly compete with Trilog by using *confidential* customer information acquired as a Trilog employee. In *Van Products Co. v. General Welding & Fabricating Co.*, 419 Pa. 248, 262-263, 213 A. 2d 769, 777 (1965), we said: "It is clear that this jurisdiction affords protection to an employer's confidential customer information. . . . As with any other trade secret, for customer information to be protectible it must be a particular secret of the business, of value to the employer and wrongfully appropriated by the employee."

Girard Bank, as a member of the consuming public, decided that Famularo's talent, knowledge, and experience in the data processing field, would be valuable to them. Famularo, in a free enterprise system, had every right to compete with his former employer and serve Girard so long as he did not do so by unfair competition. In *Spring Steels, Inc. v. Molloy*, 400 Pa. 354, 363, 162 A. 2d 370, 375 (1960), we stated: "Nor is the fact that the new company may acquire some

of the plaintiff's former customers contrary to law, it is not a phenomenal thing in American business life to see an employee, after a long period of service, leave his employment and start a business of his own or in association with others. And it is inevitable in such a situation, where the former employee has dealt with customers on a personal basis that some of those customers will want to continue to deal with him in his new association." The trial court's findings do not sustain its ultimate factual conclusion that Famularo used any *confidential* information in competing with Trilog.

What we have said about Famularo's alleged unfair competition would be equally applicable to appellants Marabella and Gawrys. Even though their contracts did not contain any provisions concerning unfair competition, they were still subject to the common law of unfair competition. Restatement of Torts 757(b), 759 (1939). Marabella as a Trilog employee worked to a lesser extent than Famularo with the shareholders' records at Girard and Gawrys never worked at Girard while he was a Trilog employee. There is no contention that Gawrys had any *confidential* customer information and Marabella's minimum knowledge did not enable him to engage in unfair competition with Trilog by the use of any *confidential* customer information. They, therefore, did not unfairly compete with Trilog.

The second promise that Famularo entered into with Trilog was "not to develop or assist in developing a shareholders' record system for himself or anyone else." This is in effect a covenant not to compete with Trilog in developing shareholders' record systems. The law of restrictive employment covenants applicable to this promise by Famularo is the same law applicable to the promises in the contracts of Marabella and Gawrys. Their contracts provided: "The employee . . .

agrees not to come under the employ of any customer or client of [Trilog], or of any business or individual with which employee has come into contact or acquaintance principally through his . . . employment with [Trilog] for a period of two years after leaving the employ of [Trilog]."

The restrictive employment covenants of Famularo, Marabella, and Gawrys are void. The covenants are not bargains "by an assistant, servant, or agent not to compete with his employer, or principal, during the term of the employment or agency or thereafter, *within such territory* and within such time *as may be reasonably necessary* for the protection of the employer or principal, without imposing undue hardship on the employee or agent." Restatement of Contracts §516(f) (1932) (emphasis added); *see Beneficial Finance Co. of Lebanon v. Becker*, 422 Pa. 531, 534 n. 3, 222 A. 2d 873, 875 n. 3 (1966). The promises are unreasonable restraints of trade in that they are "greater than is required for the protection of the person for whose benefit the restraint is imposed" and impose undue hardship "upon the person restricted . . . ." Restatement of Contracts §§515(a)-(b) (1932).

The restrictive covenants have no limitation on territory and thus are broader than is necessary for the protection of Trilog. Famularo in effect promised not to practice his profession *anywhere for anyone* in developing a shareholders' record system. His promise is similar to a covenant by an attorney not to try murder cases *anywhere for anyone* because he gained experience in trying murder cases from his former employer, or a covenant by a bricklayer not to build an apartment house *anywhere for anyone* because his former employer gave him his first opportunity to use his bricklaying talent in building an apartment house. Such covenants, unrestricted in territorial application, are not necessary to protect any valid interest of the

former employer and are unreasonable restraints of trade. *Reading Aviation Service, Inc. v. Bertolet,* 454 Pa. 488, 311 A. 2d 628 (1973); Restatement of Contracts, §516(f) (1932).

The covenants entered into by Marabella and Gawrys is, likewise, an unreasonable restraint of trade. That covenant is divisible into two parts: (1) not to come under the employ of any customer or client of Trilog's, and (2) not to come under the employ of any business or individual with which the employee has come into contact or acquaintance principally through his employment with Trilog. Each part is broader than necessary for the protection of the employer's interest and neither are divisible in any way which would allow a narrower restriction to remain intact without a rewriting. *See Reading Aviation Service, Inc. v. Bertolet,* supra. *Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 136 A. 2d 838 (1957); Restatement of Contracts §§515(a)-(b), 518 (1932); 14 S. Williston, Contracts §1647C (3d ed. 1972); Annot., 119 A.L. R. 1452 (1939).

In the first part of the covenant, Marabella and Gawrys promised not to be employed by any customer or client of Trilog. This prohibits them from accepting with any customer or client of Trilog, *any employment anywhere.* There is no restriction on the kind of employment prohibited or upon the territory covered. By its terms, the promise prevents the employee from accepting employment with a Trilog customer in *any* capacity. It covers employment totally unrelated to whatever work the employee performed for Trilog. Although Marabella and Gawrys worked as data processing employees for Trilog, they are barred from working as janitors, bank managers, truck drivers, doctors, lawyers, or indian chiefs—for any customer or client of Trilog. Such a covenant is a completely unreasonable

restraint of trade and cannot be upheld. Moreover, there is no limitation as to territory. Such a failure to limit the territory application of the covenant also renders the covenant invalid.

In the second part of the covenant, Marabella and Gawrys promised not to come under the employ of any business or individual with which they came into contact or acquaintance principally through their employment with Trilog. This promise is more unreasonable and burdensome than the first promise. It prohibits, as does the first, *any employment anywhere* and thus is not related to the protection of any reasonable employer interest. Such a covenant is so far-reaching, that it becomes ludicrous. It *bars* Marabella and Gawrys from accepting employment as bartenders in Ireland from the father of the sister-in-law of the aunt of the elevator operator whom Marabella and Gawrys happens to meet in a *bar* in Scranton while on Trilog's business. Such a restraint is illegal. Therefore, we conclude that both parts of the covenant not to compete in the contracts of Marabella and Gawrys are void and will not be rewritten by this Court.

The appellee also contends that some of the issues raised by the appellants are moot and that we should not consider them in this appeal. Specifically, the appellee points out that portions of the injunction are no longer in effect since the time periods specified by the trial court in its decree expired prior to this appeal. Even though portions of the injunction are no longer in effect, issues concerning violations of those portions may yet arise. We, therefore, cannot find that the issues raised by the appellant are moot. *Community Sports, Inc. v. Denver Ringsby Rockets, Inc.*, 429 Pa. 565, n. 7, 240 A. 2d 832, 837 n. 7 (1968). Appellees have stated in their brief to this Court that they have "no knowledge" of any violations at the time its brief was submitted. They may have since acquired   such

knowledge or may do so after this appeal is over. The appellants are entitled to a decision on the merits so long as any possibility exists that a violation may be alleged. They are entitled to a finality concerning this controversy.

From our review of the trial court's findings of fact, we must conclude that those findings do not support any aspect of the injunctive relief granted and we, therefore, reverse the trial court's decree.

Decree reversed. Each party to pay own costs.

Mr. Chief Justice JONES, Mr. Justice O'BRIEN, Mr. Justice ROBERTS, Mr. Justice POMEROY and Mr. Justice NIX concur in the result.

CONCURRING OPINION BY MR. JUSTICE EAGEN:

I am in agreement with the result reached by Mr. Justice MANDERINO; however, I feel a need to briefly discuss the restrictive employment covenants of Marabella and Gawrys.

"[P]ublic policy permits the enforcement of restrictive covenants only if they are reasonably limited as to duration of time and geographical extent [citations omitted]." *Albee Homes, Inc. v. Caddie Homes, Inc.*, 417 Pa. 177, 184, 207 A. 2d 768, 772 (1965). But, in determining whether a geographic limitation has been delineated by the covenant, it is required that one look at the contract as a whole, as well as the surrounding circumstances. *Plunkett Chemical Company v. Reeve*, 373 Pa. 513, 95 A. 2d 925 (1953). In addition, this Court in *Jacobson & Co., Inc. v. International Environment Corp.*, 427 Pa. 439, 235 A. 2d 612 (1967), ruled a court may properly limit the geographic extent of a restrictive covenant.

Mr. Justice MANDERINO apparently overlooks the above principles, but nonetheless has reached the correct result because the challenged restrictive covenant, in particular its second provision,[1] is too encompassing

258

to be considered a reasonable restraint. Restrictive covenants are reasonable only if they are " 'necessary for the protection of the employer . . . without imposing undue hardship on the employe.' " *Jacobson*, supra, 427 Pa. at 452, 235 A. 2d at 620. The particular provision here in question is far too broad to reasonably be "necessary for the protection of" Trilog, as well as being excessively burdensome upon both appellants, Marabella and Gawrys. I, therefore would invalidate this restrictive covenant, without needing to examine the feasibility of limiting said provision in scope of geographic territory.

---

[1] The second provision of the restrictive covenant of both *Marabella* and *Gawrys* provides: "The employee . . . agrees not to come under the employ . . . of any business or individual with which employee has come into contact or acquaintance principally through his . . . employment with [Trilog]. . . ."