*han,* 23 Wash.App. 813, 598 P.2d 421 (1979) (McInturff, J., dissenting).

■ Because the District Court apparently misconstrued *Solis* as holding that canine sniffing is not a Fourth Amendment intrusion *at all,* it did not make any factual or legal determination with respect to the Fort Lauderdale officers' quantum of suspicion. *See* Reporter's Transcript at 72–78. Rather than make this finding *de novo,* we prefer to remand the case to the District Court to make the necessary determinations. If the District Court finds that the Fort Lauderdale "sniffing expedition" was supported by articulable, founded suspicion, then the District Court would be correct in its prior ruling that "probable cause for [Beale's] arrest was established by the narcotic dog's actions in Florida, followed up by the narcotic dog alerting again in San Diego." *Id.* at 77.

If, however, the District Court finds that the Fort Lauderdale intrusion was based on a constitutionally deficient level of suspicion, it will have to revise its probable cause determination concerning Beale's arrest and the issuance of the search warrant in San Diego, excluding evidence tainted by the Florida dog sniffing.[21]

The judgment of conviction is therefore VACATED AND REMANDED, WITH IN-STRUCTIONS.

**HENRY HOPE X–RAY PRODUCTS, INC., Plaintiff-Appellee,**

v.

**MARRON CARREL, INC., an Arizona corporation; and Karl Ungar, Defendants-Appellants.**

**No. 80–6045.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 1, 1982.

Decided April 23, 1982.

Richard A. Segal, Gust, Rosenfeld, Divelbess & Henderson, Phoenix, Ariz., for defendants-appellants.

Jules I. Whitman, Philadelphia, Pa., argued, for plaintiff-appellee; Jeremy E. Butler, Lewis & Roca, Phoenix, Ariz., on brief.

Before HUG and SKOPIL, Circuit Judges, and KING *, District Judge.

SKOPIL, Circuit Judge:

## STATEMENT OF THE CASE

Henry Hope X-Ray Products, Inc. ("Hope") designs, manufactures, and sells film processing equipment, including roller transport processors. Hope's film processors process thin-base roll film without the attachment of a leader to the film. Only Hope makes machines that process sheet and roll film side-by-side. Hope endeavors to keep secret the design and means of producing these machines.

In June 1975, Hope hired Karl Ungar. Ungar signed a non-disclosure agreement, agreeing not to disclose confidential information to anyone outside Hope during or after his employment. When hired, Ungar had no experience processing photographic film or paper. During his first six months at Hope, Ungar revised drawings of the roller transport machines. Subsequently he worked with Henry Hope, President of Hope, laying out rack sides for the roller transport machines.

In April 1978, Ungar left Hope to work for Marron Carrel, Inc. Marron Carrel had not previously attempted to make a roller transport processing machine. Ungar attempted to build one for Marron Carrel. Marron Carrel intended to display its machine at an industry seminar in October 1978.

Hope sought preliminary and permanent injunctive relief against Marron Carrel and Ungar ("the defendants"). The district court granted a temporary restraining order and subsequently a preliminary injunction restraining the defendants from disclosing or using Hope's trade secrets. The defendants sought a writ of mandamus, directing the district court not to enforce the preliminary injunction. This court denied the petition. After trial, the district court entered judgment for Hope and issued a permanent injunction restraining the defendants from using Hope's trade secrets. The defendants appeal.

## ISSUES

1. Are the means used by Hope X-Ray in making its roller transport film processors trade secrets?

2. Is the Hope X-Ray confidentiality agreement signed by Ungar enforceable?

3. Does the permanent injunction issued by the district court meet the specificity requirement of Fed.R.Civ.P. 65(d)?

## DISCUSSION

I. Standard of Review.

The district court found that Hope's design and manufacturing process were trade secrets which were misappropriated by the defendants. We review these findings under the clearly erroneous standard. *Tri-Tron International v. Velto*, 525 F.2d 432, 435 (9th Cir. 1975).

■ Trade secret protection is governed by state law. *Sims v. Mack Truck Corp.*, 608 F.2d 87, 95 (3d Cir. 1979), *cert. denied*, 445 U.S. 930, 100 S.Ct. 1319, 63 L.Ed.2d 764 (1980). The district court, correctly applying Arizona conflict of laws principles, held that the substantive law of Pennsylvania governed the validity of Hope's trade secrets and confidentiality agreement.

■ We defer to a district court's interpretation of the law of the state in which the district is located. *Laguna Hermosa Corp. v. Martin*, 643 F.2d 1376, 1380 (9th Cir. 1981). Deference is inapplicable in this case, since an Arizona district judge construed Pennsylvania law. *See Allen v. Greyhound Lines*, 656 F.2d 418, 421–22 (9th Cir. 1981). Accordingly, we review these legal conclusions de novo. We also review the specificity of the injunction under Fed. R.Civ.P. 65(d) *de novo.*

* The Honorable Samuel P. King, Chief United States District Judge for the District of Hawaii, sitting by designation.

## II. Trade Secrets.

■ To obtain equitable relief for misappropriation of trade secrets, a plaintiff must show that it owned a valuable trade secret which it communicated in confidence to another under circumstances making it inequitable for the recipient to use or disclose it. *Felmlee v. Lockett*, 466 Pa. 1, 351 A.2d 273, 277 (1976) (quoting *Macbeth-Evans Glass Co.. v. Schnelbach*, 239 Pa. 76, 87, 86 A. 688, 691 (1913)). *See also Greenberg v. Croydon Plastics Co.*, 378 F.Supp. 806, 811 (E.D.Pa.), *modified*, 184 U.S.P.Q. 27 (E.D. Pa.1974) (Pennsylvania law).

The threshold question is whether Hope possesses trade secrets in its film processing machines. *Felmlee v. Lockett*, 351 A.2d at 277; *Anaconda Co. v. Metric Tool & Die Co.*, 485 F.Supp. 410, 421 (E.D.Pa.1980) (Pennsylvania law).

Pennsylvania has adopted the Restatement's definition of a trade secret. *Felmlee v. Lockett*, 351 A.2d at 277; *Sims v. Mack Truck Corp.*, 608 F.2d at 95 (Pennsylvania law). The Restatement provides, in pertinent part:

> "A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an advantage over competitors who do not know it or use it. It may be . . . a process of manufacturing [or] a pattern for a machine or other device. . . . Generally it relates to the production of goods, as, for example, a machine or formula for the production of an article. . . .

Restatement of Torts § 757, Comment b (1939).

■ A secret need only be sufficiently novel that it is not a matter of public knowledge. *Anaconda Co. v. Metric Tool & Die Co.*, 485 F.Supp. at 422; *Sims v. Mack Truck Corp.*, 488 F.Supp. 592, 598–99 (E.D. Pa.1980) (Pennsylvania law). It may be only a slight advance over common knowledge and practice in the trade. *Anaconda Co. v. Metric Tool & Die Co.*, 485 F.Supp. at 422; *Greenberg v. Croydon Plastics Co.*, 378 F.Supp. at 812.

■ Secrecy need not be absolute. The owner of the secret need only take reasonable precautions to ensure that it would be difficult for others to discover the secret without using improper means. *Anaconda Co. v. Metric Tool & Die Co.*, 485 F.Supp. at 422 (quoting *Greenberg v. Croydon Plastics Co.*, 378 F.Supp. at 812).

The defendants do not contest that Hope had a substantial investment in the design and manufacture of its processing equipment, nor that Hope took reasonable precautions to preserve the secrecy of that information.

### A. Novelty

The defendants contend that there is nothing novel in Hope's machines generally and also that particular attributes of the machines are common in the trade.

■ The defendants argue that the means of manufacturing film processors was known to the trade. They point to Kodak's manufacture of such a machine. The Kodak machine, which is not presently produced, was not leaderless, nor gear-driven. The district court did not clearly err in rejecting the defendants' contention.

■ The defendants challenge the district court's finding that Hope's use of plastic gears to drive its rack rollers is a trade secret. We do not understand the district court to have found that the use of plastic gears *per se* is Hope's trade secret. It is unclear whether the district court found that the shape of the gears themselves was Hope's trade secret. The evidence suggested that some of the gears were standard shapes, while others were not. Because this question affects the scope of injunctive relief, we must remand to the district court for a finding on whether Hope possesses a trade secret in the shape of some of its gears. The district court's finding that the configuration of the gears was Hope's trade secret is not clearly erroneous.

The defendants argue that the propriety of using a certain plastic in rollers, the means of manufacturing rollers, the use of a particular thermometer, and the proper

bearing tolerances were not Hope's trade secrets. The district court rejected these contentions.

■ Hope had specially experimented with the plastic it used in its rollers, its means of manufacturing rollers, and the thermometer it put into its machines. No other manufacturer used these items. Similarly, no other manufacturer used the nonstandard bearing tolerances Hope used. The district court's findings that these data were Hope's trade secrets is not clearly erroneous.

The defendants appear to contend that Hope's roller and gear configurations were known to the trade. They cite a 1959 article by Kodak employees showing allegedly similar configurations. Hope presented evidence that its rack layout was unique. The district court's finding to that effect is not clearly erroneous.

B. Disclosure by Sale.

■ Under Pennsylvania law, there is apparently no trade secret if, at the time of disclosure or use by a misappropriator, the allegedly secret information could have been ascertained by inspection of sold articles or by reverse engineering. *Van Products Co. v. General Welding & Fabricating Co.*, 419 Pa. 248, 213 A.2d 769, 779–80 (1965); *International Election Systems v. Shoup*, 452 F.Supp. 684, 706 (E.D.Pa.1978), *aff'd mem.*, 595 F.2d 1212 (3d Cir. 1979) (Pennsylvania law). Reverse engineering involves starting with the known product and working backward to discover the process by which it was developed. *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476, 94 S.Ct. 1879, 1883, 40 L.Ed.2d 315 (1974); *Anaconda Co. v. Metric Tool & Die Co.*, 485 F.Supp. at 418. There is no trade secret even if the misappropriator has not obtained the information by honest means but has used information given in confidence. *Van Products Co. v. General Welding & Fabricating Co.*, 213 A.2d at 780.

Two federal courts, applying Pennsylvania law, have adopted the contrary rule; that the misappropriator must show that it relied on honestly-obtained information, rather than on confidences. *Servo Corp. v. General Electric Co.*, 393 F.2d 551, 555 (4th Cir. 1968) (Pennsylvania law); *Smith v. Dravo Corp.*, 203 F.2d 369, 374 (7th Cir. 1953) (Pennsylvania law). *See, e.g., Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 793 (9th Cir. 1976) (California law); *Bolt Associates v. Alpine Geophysical Associates*, 365 F.2d 742, 749 (3d Cir. 1966) (New Jersey law). Although we would prefer the rule requiring the defendant to prove actual reliance on honest discovery, we are bound by *Van Products*, which permits the defendant to show that, at the time, it could have relied on honest discovery.

■ Where the plaintiff shows that it possesses valuable secrets, confidentially disclosed to the defendant, followed by manufacture of a closely similar device by the defendant, the burden shifts to the defendant to show that, at the time, it could have arrived at the process by independent invention, inspection, or reverse engineering. *Greenberg v. Croydon Plastics Co.*, 378 F.Supp. at 815.

■ The district court's findings that the identity of the high performance plastic, the means of construction of the rollers, the stand pipe fittings, the materials used in the crimper, and the embossment pattern made by the crimper were Hope's trade secrets are not clearly erroneous. The defendants contend that these facts could have been ascertained by inspection and testing. There was ample evidence that machines containing these experimental items were not sold publicly. The defendants failed to show that, at the time they developed their machine, they could have discovered the information by honest means.

■ The defendants challenge the district court's finding that the make and model number of the thermometer used in Hope's film processors were trade secrets. The defendants failed to show that they could have identified this unusual, unmarked thermometer by any means other than misappropriation of Hope's secret by Ungar. The finding is not clearly erroneous.

The defendants argue that the district court clearly erred in finding that the plumbing design of Hope's film processors was a trade secret. Hope concedes that this information would be apparent on examination of Hope's machines. It argues that the defendants did not have one to examine. As noted above, that fact is not crucial under Pennsylvania law. The question is whether the defendants could have, at the time, obtained the information from materials in the public domain. The evidence indicates that they could have. We must reverse the finding that Hope possessed a trade secret in the plumbing design of its machines.

The defendants contest the finding that Hope's techniques for linking the roller transport racks of its processing equipment was a trade secret. The defendants failed to show that this technique would be apparent upon examination. The finding is not clearly erroneous.

### C. Disclosure by Patent.

Matters disclosed in a patent publication destroy any trade secret contained therein. *Felmlee v. Lockett*, 351 A.2d at 278. *But see* 1 R. Milgrim *Trade Secrets* § 2.06 (Supp.1981) (questioning *Felmlee* for failing to distinguish between design, disclosed in patent, and the pattern used to make it). The defendants contend that the film turnaround, the rack layouts, and the leaderless film movement system are disclosed in Hope's patents.

The patent drawings of the film turnaround did not show film paths, but only a general depiction of a gearing system. The defendants also failed to show that Hope's patents revealed the details of rack layouts, the principle behind Hope's racks, or Hope's system for moving film from one tank to another without a leader. The district court did not clearly err in finding that none of Hope's trade secrets were disclosed in its patent publications.

### III. The Confidentiality Agreement.

Under Pennsylvania law, a confidentiality agreement ancillary to the taking of employment is valid if its restrictions are " 'reasonably limited as to duration of time and geographical extent.' " *Beneficial Finance Co. v. Becker*, 422 Pa. 531, 222 A.2d 873, 875 & n.3 (1966) (quoting *Albee Homes, Inc. v. Caddie Homes, Inc.*, 417 Pa. 177, 184, 207 A.2d 768, 772 (1965)). The Pennsylvania Supreme Court has stated that a confidentiality agreement's restrictions may not be " 'greater than is required for the protection of the person for whose benefit the restraint is imposed' and impose undue hardship 'upon the person restricted' ". *Trilog Associates v. Famularo*, 455 Pa. 243, 314 A.2d 287, 293–94 (1974) (Manderino, J., announcing the judgment of the court) (quoting Restatement of Contracts § 515 (1932)).

The confidentiality agreement which Ungar signed was unlike the unrestricted covenant not to compete struck down in *Trilog Associates v. Famularo*, 314 A.2d at 293-94. Like the restrictive covenant upheld in *Beneficial Finance Co. v. Becker*, 222 A.2d at 875, the restrictive covenant here was limited to a prohibition on disclosing confidential information. Although the confidentiality agreement here did not contain the time and space limitations present in the restrictive covenant upheld in *Beneficial Finance Co. v. Becker*, 222 A.2d at 875 & n.3, the restrictive covenants in Ungar's employment agreement were no more than reasonably necessary to protect Hope. Hope sells its products internationally. The disclosure or use of its trade secrets anywhere could reasonably be expected to harm Hope's business interests. The limitation to confidential information contains the implicit temporal limitation that information may be disclosed when it ceases to be confidential. The district court did not err in concluding that the restrictive covenants signed by Ungar are valid and enforceable.

### IV. The Injunction.

The defendants contend that the permanent injunction issued by the district court is not sufficiently specific and therefore

violates Fed.R.Civ.P. 65(d). Fed.R.Civ.P. 65(d) provides, in pertinent part: "Every order granting an injunction . . . shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained".

▮ In these circumstances, the district court did not err in attaching a confidential appendix to its injunction. Ordinarily, an injunction should not incorporate by reference another document. *See Los Angeles Trust Deed & Mortgage Exchange v. SEC*, 264 F.2d 199, 205 (9th Cir. 1959). This is not a technical requirement, but is designed to ensure adequate notice to defendants of the acts prohibited. *Seagram Distillers Corp. v. New Cut Rate Liquors*, 221 F.2d 815, 821 (7th Cir.), *cert. denied*, 350 U.S. 828, 76 S.Ct. 59, 100 L.Ed. 740 (1955); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2955 at 551 52 (1973). *See also Schmidt v. Lessard*, 414 U.S. 473, 476, 94 S.Ct. 713, 715, 38 L.Ed.2d 661 (1974) (per curiam).

In this case, the district court set out the acts prohibited in a sealed appendix which was to be transmitted only to the parties to ensure that Hope's trade secrets were not divulged in the injunction. The district court did not err in resorting to this eminently sensible expedient.

The defendants also object that even the appendix does not specifically state what acts are prohibited. The injunction and appendix adequately notify the appellants of the trade secrets possessed by Hope which may not be misappropriated. *See Dekar Industries v. Bissett-Berman Corp.*, 434 F.2d 1304, 1306 (9th Cir. 1970), *cert. denied*, 402 U.S. 945, 91 S.Ct. 1621, 29 L.Ed.2d 113 (1971). The injunction complies with rule 65.

## CONCLUSION

The district court correctly held that Hope X-Ray possessed valid trade secrets which were misappropriated by the appellants. We affirm these findings, with two exceptions. We also affirm the injunction granted by the district court. Accordingly, the judgment appealed from is AFFIRMED in part, REVERSED in part, and REMANDED.