B. BRAUN MEDICAL, INC., a Pennsylvania corporation, Plaintiff-counter-defendant—Appellant,

v.

Bobby Eugene ROGERS, an individual; Rozi Medical Devices Limited, an Ohio limited liability company, aka Rozi LLC, Defendants-counter-claimants—Appellees.

---

1. *In re Burrell*, 415 F.3d 994, 998 (9th Cir. 2005); *Sze v. I.N.S.*, 153 F.3d 1005, 1007 (9th Cir.1998).

2. 42 U.S.C. § 4321 *et seq.*

3. *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39, 71 S.Ct. 104, 95 L.Ed. 36 (1950); *see also In re Burrell*, 415 F.3d at 999.

B. Braun Medical, Inc., a Pennsylvania corporation, Plaintiff-counter-defendant—Appellee,

v.

Bobby Eugene Rogers, an individual; Rozi Medical Devices Limited, an Ohio limited liability company, aka Rozi LLC, Defendants-counter-claimants—Appellants.

Nos. 03–56193, 04–56836.

D.C. No. CV–98–00250–RMB.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 2005.

Decided Jan. 13, 2006.

502

Eric B. Wolff, Kirkland & Ellis, Washington, DC, for Plaintiff–Counter–Defendant–Appellant.

Gary Dukarich, Theodore A. Pianko, Joel A. Kauth, Christie Parker & Hale, LLP, Newport Beach, CA, Robert M. Keese, Thomas V. Girardi, Girardi &

Keese, Los Angeles, CA, Martin N. Buchanan, Law Office of Martin N. Buchanan, San Diego, CA, John P. Sumner.

Before PREGERSON, COWEN,* and THOMAS, Circuit Judges.

MEMORANDUM**

B. Braun Medical, Inc. ("Braun") appeals the judgment of the district court awarding damages and equitable relief in the form of patent reassignment. Bobby Eugene Rogers and Rozi Medical Devices Limited, an Ohio limited liability company (collectively, "Rozi"), cross-appeal.

Although we need not recount all of the complex factual and procedural history of this case, a very brief summary is necessary for convenient reference. This case arises out of a license agreement ("License Agreement") between the parties which gave Braun the right to develop a marketable version of a capless valve for an intravenous device, which Rozi had patented ("the '114 Patent"). In order to encourage Braun to develop a product from the '114 Patent, Rozi retained ViR Engineering ("ViR") to prepare design alternatives. ViR did so, in what the parties have referenced as "Phase I" of the project. The results of Phase I were presented to Braun. Braun contracted with ViR for further development of the product, which was accomplished in "Phase II" of the project. Braun asked ViR to assign its rights to the work product completed in Phase II to Braun, which ViR did. Braun, without notifying Rozi, then filed a patent application based on the Phase II work and was granted a patent ("the '451 Patent"). Ultimately, the '451 Patent became a Braun product named Ultrasite. After Rozi discovered the Braun patent and disputed Braun's right to it, Braun filed the instant action, seeking a declaration that it was sole owner of the '451 Patent. Rozi filed a counterclaim seeking, *inter alia,* damages for misappropriation of trade secrets and equitable relief in the form of patent reassignment. A jury awarded $16 million in compensatory damages, $2.5 million in future damages for misappropriation of trade secrets, $1 million in damages for fraud, and $1.25 million in punitive damages for fraud. The district court enhanced the trade secret damages by $5 million for wilful and malicious conduct pursuant to Cal. Civ.Code § 3426.3.

Following post-trial motions, the district court reduced the $16 million compensatory damage award to $5 million. The district court then conducted an equitable bench trial and ordered Rozi to elect either the $2.5 million future damages award or ownership of the '451 Patent with an exclusive license to Braun. Rozi chose patent ownership, and the district court entered final judgment assigning the '451 Patent to Rozi.

I

The district court correctly concluded that Rozi's action for misappropriation of trade secrets pursuant to the California Unfair Trade Secrets Act ("CUTSA"), Cal. Civ.Code § 3426 *et seq,* was not barred by the statute of limitations. Under CUTSA, an action for misappropriation of a trade secret must be brought "within three years

* The Honorable Robert E. Cowen, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." Cal Civ Code § 3426.6. Under California law, "a *suspicion* of wrongdoing, coupled with a knowledge of the harm and its cause, will commence the limitations period." *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 245 Cal. Rptr. 658, 663, 751 P.2d 923 (1988) (interpreting California Code of Civil Procedure § 340) (emphasis in original). "While resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference," a court may determine a statute of limitations issue as a matter of law. *Id.* at 663.

The first point at which Rozi could have reasonably suspected wrongdoing occurred in April 1995, when Rozi learned that Braun intended to bring a capless valve to market. Although the record indicates that Rozi presumed that the valve was not covered by the License Agreement, a reasonable person may have been suspicious enough to investigate whether Braun's capless valve was covered by the License Agreement. Had they investigated, Rozi would have likely discovered that ViR had assigned its rights in Phase II to Braun, and that Braun had applied for the '451 Patent.

Assuming that the statute of limitations began running in April 1995, Rozi was required to bring its cause of action for misappropriation of trade secrets prior to April 1998. Braun filed its action for declaratory judgment in February 1998. Rozi filed their first counterclaim in February 1999 and filed its amended counterclaim asserting a trade secret misappropriation claim in June 1999.

■ The fact that Rozi did not file its counterclaim alleging misappropriation of trade secrets until 1999 does not end the

inquiry because Braun's declaratory relief action tolled the statute of limitations on Rozi's claim. When a claim for trade secret misappropriation is pled as a counterclaim and arises out of the same facts as the plaintiff's claim, the statute of limitations "is a bar to the defendant's affirmative claim only if the period has already run when the complaint is filed. The filing of the complaint suspends the statute during the pendency of the action, and the defendant may set up his [counter]claim by appropriate pleading at any time." *Sidney v. Sup.Ct.*, 198 Cal.App.3d 710, 244 Cal. Rptr. 31, 34 (1988). Thus, under California law, the filing of Braun's declaratory judgment action before the statute of limitations ran on Rozi's counterclaim tolled the statute of limitations because both the action for declaratory relief and the claim of misappropriation of trade secrets were based on the same underlying facts. As a result, even starting the statute of limitations at the earliest possible time—April 1995—Rozi's counterclaim asserting a trade secret misappropriation claim was timely filed as a matter of law and it was unnecessary to submit the issue to the jury.

■ Braun argues that the statute of limitations began running in 1993, when Rozi returned the check that Braun had sent to cover half of the expenses for Phase I, with the explanation that Rozi retained sole ownership of Phase I. These events were clearly insufficient to put Rozi on notice that Braun claimed sole ownership of the Phase I materials and would later convert the Phase I materials for its own use through a patent application. While Rozi may have known that Braun claimed *some* ownership in Phase I, there was no suggestion in March of 1993 that Braun would take Phase I in its entirety for Braun's own use. Indeed, there is no evidence in the record that Rozi knew or

should have known of Braun's acquisition of the rights to Phase II or its application for Patent '451 prior to April 1995. Rather, the parties continued their communications and relationship under the License Agreement, under which Braun was to develop a marketable product based on Patent '114 and Phase I.

## II

### A

The district court did not commit reversible plain error in its definition of the trade secret.[1] Under plain error review, we exercise our discretion to correct the error only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

In a misappropriation of trade secret case, under California law, a plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Diodes, Inc. v. Franzen*, 260 Cal.App.2d 244, 67 Cal.Rptr. 19, 24 (1968), *accord Imax Corp. v. Cinema Techs.*, 152 F.3d 1161, 1163–64 (9th Cir.1998).

■ In this case, the district court adopted the plaintiff's definition of the trade secret at issue in chambers, outside the presence of the jury. Braun claims that the definition was overly broad. However, the definition was never communicated to the jury, and Braun concedes that the jury was properly instructed. Braun does not argue on appeal that the district court improperly rejected any instruction that it tendered purporting to define the subject matter of the trade secret. Because the jury was not exposed to the allegedly overly broad definition and determined that a trade secret existed based on proper instructions, any error that resulted from the court's erroneous in chambers definition of the trade secret did not rise to the level of plain error.

### B

■ The district court did not abuse its discretion in excluding evidence of two patents that Braun wished to present to show that substantial combinations of the features found in the Phase I designs were in the public domain. The evidence tendered did not prove what was in the public domain at the time that Braun allegedly misappropriated Rozi's trade secrets. Both patents were issued after the Braun applied for the '451 Patent and after the alleged misappropriation took place. The state of industrial knowledge *after* the al-

1. Braun did not distinctly preserve this issue for appeal. Indeed, Braun does not contend directly that it did; rather Braun argues in the passive voice that the district court "permitted" the case to proceed and "abdicated" its responsibilities. Braun did not file a motion for judgment as a matter of law raising the issue. Nor at the conclusion of the case did Braun claim the district court improperly refused to submit any requests to charge to the jury. Braun did file a motion *in limine* seeking to exclude evidence and argument based on the district court's allegedly overbroad definition of the trade secret at issue, but only sought the remedy of excluding evidence and argument "other than Types I and III or any attributes of Types I and III other than the flow-thru design and rigid tip insert." This is insufficient to preserve an objection for judgment as a matter of law. Moreover, although it had a full opportunity to do so, with some limited exceptions, Braun did not argue to the jury that Rozi's definition of trade secret was too broad, nor did it make a contemporaneous trial objection re-asserting the objection. *See United States v. Archdale*, 229 F.3d 861, 864 (9th Cir.2000). In short, Braun is claiming plain error.

leged misappropriation is irrelevant to determining whether a trade secret existed *at the time* of the alleged misappropriation.

■ Furthermore, even if the district court did erroneously exclude evidence of the other patents, any resulting error was harmless. In the fourteen-day trial, Braun presented a large volume of evidence suggesting that the elements and arrangements of the Phase I designs were commonly known throughout the industry.

### III

■ The district court erred in reducing the jury's compensatory damage award. The CUTSA permits an injured party to recover "damages for the actual loss caused by misappropriation" and for any "unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss." Cal. Civ.Code § 3426.3. *See also Vermont Microsystems v. Autodesk, Inc.,* 138 F.3d 449, 452 (2d Cir.1998) (applying California law and explaining that section 3426.3 permits recovery of both actual damages and unjust enrichment as long as there is no double counting). Even though an appropriating party's profits are not entirely traceable to its misappropriation, the complaining party may still recover a portion of its profits. *See, e.g., Digital Envoy, Inc., v. Google, Inc.,* No. 04-1497, 2005 WL 2999364, 2005 U.S. Dist. LEXIS 27939, at *16 (N.D.Cal. Nov. 8, 2005) ("use of a party's trade secret need not be the sole source of a defendant's profits where a plaintiff has shown some causal nexus between such profits and the use of its trade secrets"). A plaintiff may recover a reasonable royalty only "where the court finds that neither actual damages to the holder of the trade secret nor unjust enrichment to the user is provable." *Cacique, Inc. v. Robert Reiser & Co.,* 169 F.3d 619, 623

(9th Cir.1999) (applying California law). Therefore, to the extent that the district court's decision was based on its view that Rozi was not entitled to damages for unjust enrichment, the district court erred as a matter of law.

■ To the extent that the district court reduced the damages award because it viewed the award as excessive, it violated the Seventh Amendment's admonition that "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. Const. Amend. VII. A court violates the Seventh Amendment's guarantee of a jury trial by ordering a remittitur without affording the party the option of a new trial. If a court determines that a jury's damages award is excessive after viewing the evidence in the light most favorable to the prevailing party,

> [i]t may grant defendant's motion for a new trial or deny the motion conditional upon the prevailing party accepting a remittitur. The prevailing party is given the option of either submitting to a new trial or of accepting a reduced amount of damage which the court considers justified.

*Fenner v. Dependable Trucking Co.,* 716 F.2d 598, 603 (9th Cir.1983). Offering the prevailing party the option of a new trial avoids a violation of the Seventh Amendment. *Hetzel v. Prince William County,* 523 U.S. 208, 211, 118 S.Ct. 1210, 140 L.Ed.2d 336 (1998). In this case, the district court reduced the compensatory damages award without affording Rozi the option of a retrial. Under these circumstances, if the jury award is not against the clear weight of the evidence, it must be reinstated. *See Silver Sage Partners, Ltd. v. City of Desert Hot Springs,* 251 F.3d 814, 818-19 (9th Cir.2001).

In sum, to the extent that the district court founded its decision on a belief that the damages were precluded as a matter of law, it erred. To the extent that the district court substituted its own judgment as to the damages that should have been awarded, it violated the Seventh Amendment. The jury award for compensatory damages must be reinstated.

## IV

■ The district court erred in denying Braun's motion for judgment as a matter of law on Rozi's fraud claim. In California, to support a fraud claim, a plaintiff must prove (1) misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) justifiable reliance, and (5) damages. *Seeger v. Odell,* 18 Cal.2d 409, 115 P.2d 977, 981 (1941). Each element must be proved in order to sustain a fraud claim. *Moore v. Brewster,* 96 F.3d 1240, 1245 (9th Cir.1996) (applying California law) ("The indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages.") (superceded by statute on other grounds). Under California law, "[i]t is axiomatic that to obtain a recovery for fraud, a claimant must prove, *inter alia,* that damages were sustained as a proximate cause of the fraudulent conduct." *Kruse v. Bank of America,* 202 Cal.App.3d 38, 248 Cal.Rptr. 217, 230 (1988). "Deception without resulting loss is not actionable fraud." *Service by Medallion, Inc. v. Clorox Co.,* 44 Cal.App.4th 1807, 1818, 52 Cal.Rptr.2d 650 (Cal.App.1996).

The record in this case is devoid of specific evidence of damages sustained as a proximate cause of the alleged fraud. Rozi did not offer specific evidence as to fraud damage, nor did it argue specific damages to the jury. Rather, Rozi's counsel argued in closing as to the fraud claim:

The damage here is tougher. We don't have accounting data from which an expert can come in and calculate to you that damage which has to be separate, as I said, from the trade secrets. I'm going to have to leave it to your good judgment to figure out what the damage award should be. What is it—you know, and you're allowed broad latitude in this endeavor. If an inventor has a dream and he's successful and he puts out a wonderful product, the patent—I'm not saying the device itself but that patent that can be useful, and he's deprived of its use, what is that worth on an independent basis from everything else you've heard. I don't know that I'm even so much talking about the strict economic value as much as the rest of it, the value of getting the satisfaction of the recognition of yourself as someone who made a significant contribution into the world.

That 114 patent had significant value. We know that. In 1992 they were willing to pay $300,000 plus 250—right at—350 plus 250 right up front. It had significant value. Where could he have gone? What could he have sold it for? I don't think this is going to be a big number. We saw big numbers. This is not going to be a number in that magnitude.

But I would submit to you that it's also not a small thing. It should not be demeaned or diminished. I think myself your damage award for fraud should be in the area of $1,000,000. I think it should be enough to let Braun know that they shouldn't play with their power, that they can't be one of the 800-pound gorillas. I told you not to punish them as a corporation. In fact, punishment would come later if we get to that stage, but don't let them walk around with impunity just because they're big.

Treat them by the same standards that you'd treat other human beings.

In short, in his closing argument Rozi's counsel properly conceded that Rozi had offered no specific proof of damage proximately caused by fraud independent of the damages associated with the trade secret misappropriation claim. Rather, his theory of fraud damages was based on "loss of a dream," "the value of getting the satisfaction of the recognition of yourself as someone who made a significant contribution into the world," and punishment.

Under California law, speculative fraud damages are not actionable. *Agnew v. Parks*, 172 Cal.App.2d 756, 758, 343 P.2d 118 (Cal.App.1959). Rozi's counsel implied in his closing argument—and Rozi now argues on appeal—that Rozi would have terminated its contract with Braun and sold its rights for more money had it know of Braun's actions. However, the only evidence in the record to support this theory consists of generalized market speculations, such as that there was "serious competition" during the relevant period. In addition, California courts have rejected the theory that "a party duped into performing an existing contractual obligation has suffered damage." *Auerbach v. Great Western Bank*, 74 Cal.App.4th 1172, 1185, 88 Cal.Rptr.2d 718 (Cal.App.1999).

In denying Braun's motion for a judgment as a matter of law, the district court correctly noted that Rozi had lost three years development time on the patent. However, there was no specific proof of damage that Rozi tendered as the proximate result of this time loss. The only support for the jury's $1,000,000 fraud damage award is contained in counsel's closing argument and, as we have discussed, his rationale cannot sustain a verdict for actionable fraud. For these reasons, the district court erred in denying Braun's motion for judgment as a matter of law on the fraud claim.

## V

■ The district court erred when it granted equitable relief in the form of patent reassignment because that remedy is not permitted by California law. The CUTSA prescribes its own scope. It states that it "does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret." Cal Civ Code § 3426.7. This language has been interpreted to mean that the CUTSA was intended to occupy the field in California. *Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F.Supp.2d 941, 954 (N.D.Cal.2003).

The CUTSA specifically prescribes the remedies that are available to the complaining party in an action for misappropriation of trade secrets. With respect to injunctive relief, it provides:

(a) Actual or threatened misappropriation may be enjoined. Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation.

(b) If the court determines that it would be unreasonable to prohibit future use, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

(c) In appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order.

Cal Civ Code § 3426.2.

Although California courts not have interpreted whether patent reassignment is

an available remedy for trade secret misappropriation, the plain meaning of section 3426.2 suggests that it is not. Section 3426.2 states that injunctive relief is only available to *protect* a trade secret. Once a trade secret has been widely disclosed, it is no longer secret and does not merit injunctive relief.[2]

In California, when information "is generally known in the trade and already used by good faith competitors, it is not a protectable trade secret and injunction should not issue." *Am. Paper & Packaging Prods., Inc. v. Kirgan*, 183 Cal.App.3d 1318, 1326, 228 Cal.Rptr. 713 (1986). "Matters disclosed in a patent publication destroy any trade secret contained therein." *Henry Hope X–Ray Prods., Inc. v. Marron Carrel, Inc.*, 674 F.2d 1336, 1342 (9th Cir.1982).

In this case, the district court assigned the '451 Patent to Rozi based on Braun's alleged misappropriation of trade secrets. That remedy is an impermissible form of injunctive relief under CUTSA because CUTSA only permits an injunctive relief to the extent that it is necessary to protect a trade secret. At the time the district court entered its order, any trade secret had been disclosed in the '451 Patent and therefore ceased to exist.

The Federal Circuit's decision in *Richardson v. Suzuki Motor Co. Ltd.*, 868 F.2d 1226, 1250 (Fed.Cir.1989) (applying California law), in which the Federal Circuit assigned a patent as a remedy for a misappropriation of trade secrets, does not require a contrary conclusion because it was decided on pre-CUTSA law. The trade secret misappropriation at issue in *Richardson* occurred in 1982, before California enacted the CUTSA. 868 F.2d at 1250.

As the California Supreme Court explained in *Cadence Design Systems, Inc. v. Avant! Corp.*, 29 Cal.4th 215, 127 Cal. Rptr.2d 169, 57 P.3d 647 (2002), common law governs claims that arose before the effective date of the CUTSA, and the statute—including its limitation of remedies—governs those that occur after enactment of the statute. *See id.* at 652.

Rozi attempts to justify the district court's assignment based on principles of constructive trust. However, the CUTSA does not provide for the remedy of the imposition of a constructive trust either. Thus, because the remedy fashioned by the district court was not permitted under applicable California law, the district court erred in ordering it.

## VI

In sum, we affirm the judgment of the district court in part and reverse it in part. The district court did not err in determining that Rozi's claim for trade secret misappropriation was not barred by the statute of limitations. It did not commit plain error in its in-chambers acceptance of Rozi's trade secret definition. It erred in its reduction of the compensatory damage award, in denying Braun's motion for judgment as a matter of law on the fraud claim, and in awarding Rozi patent reassignment. Given our resolution of these issues, we need not reach any other issue urged by the parties.

Therefore, we modify the judgment of the district court as follows: (1) The jury's compensatory damage award of $16 million and the future damage award of $2.5 million for misappropriation of trade secrets are reinstated; (2) the jury's $1 million

---

**2.** This is not to say that patent reassignment is not available where the remedy is based on a cause of action other than misappropriation of trade secrets. *Cubic Corp. v. Marty,* 185 Cal.App.3d 438, 229 Cal.Rptr. 828 (1986) (granting reassignment based on a breach of contract).

fraud damage award is vacated; and (3) the order granting patent reassignment to Rozi is vacated. In all other respects, we affirm the judgment of the district court. The modified judgment shall be entered accordingly. Each party shall bear its own costs on appeal.

**AFFIRMED IN PART; REVERSED IN PART**

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.