[Civ. No. 31086.   Second Dist., Div. One.   Aug. 10, 1967.]

STANLEY I. LOEB, Plaintiff and Appellant, v. MAE A. WILSON et al., Defendants and Respondents.

Sisenwein & Stanton and Warren M. Stanton for Plaintiff and Appellant.

Max E. Gilmore, Herbert S. Nusbaum, Crowley & Goffin and Ron Swearinger for Defendants and Respondents.

FOURT, J.—Stanley Loeb appeals from a judgment denying him specific performance of an escrow agreement for the purchase and sale of real property which he sought to enforce against Doctor Mae Wilson, seller.

The trial court denied appellant specific performance upon the grounds that the escrow agreement disclosed inadequate consideration, that the subordination agreement contained therein was unjust and unreasonable, and that the seller's

assent to the contract was vitiated by her mistake of fact. The trial court also denied appellant damages because not only was the seller excused from performance, but appellant knew when he was substituted as purchaser under the escrow agreement that the title was defective. Appellant contends that the trial court erred in denying specific performance and damages and, in addition, failed to make findings as to all material facts necessary to support the judgment. These contentions are without merit.

On September 10, 1962, Doctor Mae Wilson, then aged 80, entered into a six-month escrow agreement for the sale of a certain parcel of real property to Lasky & Monka Development Co. The purchaser deposited $500 in escrow and agreed to deposit $19,500 more before the scheduled close of escrow on March 10, 1963, but failed to make the final deposit. Time for the purchaser's performance was extended, and on April 8, 1963, appellant, by written amendment to the escrow agreement, was substituted as buyer.[1] Lasky & Monka Development Co. then withdrew its $500 deposit, but appellant made no escrow deposit.

The evidence showed that from 1918 until 1945 Doctor Wilson practiced medicine and surgery in Los Angeles. In 1941 she purchased the subject property and intervening events led her to believe, at the time she entered the escrow agreement, that she was the sole owner of the parcel. However, in 1943 she was convicted of unlawfully performing an abortion and, because she was then in poor health and faced a potential prison term, Doctor Wilson conveyed the subject property to herself and her niece, Barbara Dukes, as joint tenants in consideration of love and affection. Doctor Wilson believed she then extracted an oral promise from her niece to reconvey her interest in the property should her aunt ever request her to do so. The attorney who took the appeal for Doctor Wilson following her criminal conviction later obtained a judgment against her for legal fees and, while she was in prison, sold her interest in the subject property at execution sale. Doctor Wilson, believing that the entire right, title and interest in and to the property had thus been transferred, later paid the judgment and secured a quitclaim deed to the property from the judgment creditor. In 1957, acting

---

[1] The amended instructions read in pertinent part: ''The above numbered escrow is to be extended to close on or before April 15, 1964, or as soon as the interest of Barbara A. Dukes can be eliminated, whichever is sooner.''

upon the assumption that this deed rendered her once again the sole owner of the property, Doctor Wilson borrowed funds with a note secured by a first trust deed thereon.

The escrow company, however, early in April of 1963 informed Doctor Wilson that its title report disclosed that Barbara Dukes still owned an undivided one-half interest in the property. Doctor Wilson, in order to raise money to pay for legal services to quiet title against her niece, then contacted her real estate broker, Florence Ball, who suggested that she obtain an advance of $3,500 on the escrow using a trust deed on the property as security for repayment. Ultimately it was arranged for Loeb to make the loan although Doctor Wilson believed instead that she received an advance on the escrow from Lasky & Monka because she did not know that appellant had been substituted as buyer.

Doctor Wilson proceeded, in May of 1963, to file suit against Barbara Dukes to establish a constructive trust and to require her niece to reconvey her recorded interest in the subject property. Her niece, however, denied having promised to reconvey and instead alleged that Doctor Wilson had represented to her that she established the joint title so that the property would become Barbara's at her own death. The litigation culminated on July 13, 1964, in a stipulated judgment, entered on the advice of counsel, in which Doctor Wilson acknowledged that her niece had acquired and held in the property an absolute and undivided one-half interest in joint tenancy. On July 16, Doctor Wilson's counsel, unaware that Loeb had been substituted in the escrow, advised Lasky & Monka of these grounds for rescission and sought to explore an amicable settlement.

The instant case, which was thereafter initiated by Loeb, came on for trial in June of 1965 and the trial court therein found as follows: that the purchase price of the subject property under the escrow agreement was $65,000 while the fair market price at the date of sale was $99,000; that the subordination clause in the escrow agreement did not state the maximum amount or term of the loan to which the seller's deed of trust was to be subordinated; that Doctor Wilson entered the escrow agreement under a mistake of fact in that she then believed she owned the entire fee interest in the subject property; that Loeb knew of respondent Dukes' claim to an undivided one-half interest in the subject property when he was substituted as purchaser; that the sum of $3,500 advanced by Loeb, and evidenced by Doctor Wilson's promis-

sory note secured by a first trust deed on subject property, was a loan rather than a deposit in escrow; that appellant had no money on deposit in escrow; that Doctor Wilson did not act in bad faith in refusing to convey the subject property to appellant; that Loeb incurred no expenses in connection with the escrow transaction.　■　From these facts the trial court concluded that the consideration was inadequate, that the subordination provision was not just and reasonable because it was uncertain, and that Doctor Wilson had entered the agreement under a vitiating mistake of fact. Any one of the foregoing grounds would render the agreement unenforceable. (Civ. Code, § 3391.)

Appellant herein attempts to persuade the appellate court to retry the case and accept his conclusions rather than the trial court's findings.　■　On appeal, however, we must view the evidence in the light most favorable to respondents and indulge all intendments and reasonable inferences to sustain the trial court's findings. (*Platt* v. *Billingsley*, 234 Cal.App.2d 577 [44 Cal.Rptr. 476].)　■　". . . 'The appellate court starts with the presumption that the evidence sustains each finding of fact [citations], and the burden rests upon appellant "to demonstrate that there is no substantial evidence to support the challenged findings." . . .' " (*Conderback, Inc.* v. *Standard Oil Co.*, 239 Cal.App.2d 664, 687 [48 Cal.Rptr. 901].) This burden appellant has failed to sustain.

*Loeb* contends that the consideration was demonstrated by the evidence to be fair and adequate.　■　"Fairness and adequacy of consideration are peculiarly questions of fact to be determined in the light of all the circumstances, and the finding of the trial court should not be disturbed by an appellate court unless it is clear that there is no substantial evidence to support it." (45 Cal.Jur.2d, Specific Performance, § 24, pp. 288-289; *Wilson* v. *White*, 161 Cal. 453 [119 P. 895]; *O'Hara* v. *Wattson*, 172 Cal. 525 [157 P. 608].)　■　In the instant case the trial court's finding that the consideration provided in the escrow agreement was inadequate was strongly supported by the expert opinions of two reputable and highly qualified real estate appraisers. The court was entitled to resolve the conflict created by testimony of appellant's witnesses concerning the value of the property in respondent's favor where substantial evidence supported this decision. Presumably the testimony of appellant's appraiser and broker Florence Ball, who had an interest in the outcome of the litigation, was less convincing.

■ Not resting its decision on this ground alone, however, the trial court determined that the provision for subordination was unjust and unreasonable. The escrow agreement provided for subordination of the purchase money trust deed to a construction loan of an unstated amount. Although it specified a loan of $10,000 per apartment and $21,500 per house with interest not to exceed 7.2 percent per annum for a minimum term of 20 years, the agreement was uncertain in that it did not describe the size and number of apartment units contemplated or the maximum term of the loan. Because the terms of the agreement did not otherwise limit the amount and application of the loan funds, Doctor Wilson would have received insufficient protection thereunder—hence the agreement was unenforceable. (*Handy* v. *Gordon,* 65 Cal.2d 578 [55 Cal.Rptr. 769, 422 P.2d 329].)

■ Finally, substantial evidence supports the trial court's finding that Doctor Wilson, at the time she entered the escrow agreement, was suffering a mistake of fact with respect to the nature of her interest in the property. Her uncontradicted testimony, the loan she obtained from Florence Ball on the security of her title, and the record from the action of *Wilson* v. *Dukes,* which was introduced in evidence, all support this conclusion. ■ Moreover, when she entered the stipulated judgment in favor of her niece, Doctor Wilson acted on the advice of counsel, thus preserving her good faith and integrity therein. (*Fox* v. *Aced,* 49 Cal.2d 381, 386 [317 P.2d 608].) And ultimately, the good faith of her error renders her not only impervious to a specific performance decree but immune from incidental damages. All findings of ultimate fact essential to support its judgment were properly made and entered by the trial court. ■ ". . . With rhythmic regularity it is necessary for us to say that where the findings are attacked for insufficiency of the evidence, our power begins and ends with a determination as to whether there is *any* substantial evidence to support them; that we have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom. No one seems to listen. . . ." (*Overton* v. *Vita-Food Corp.,* 94 Cal. App.2d 367, 370 [210 P.2d 757].)

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.