[No. D001057. Fourth Dist., Div. One. Aug. 27, 1986.]

CUBIC CORPORATION, Plaintiff and Respondent, v.
WILLIAM B. MARTY, JR., Defendant and Appellant.

440

**COUNSEL**

Matthew V. Herron and Meisenheimer & Herron for Defendant and Appellant.

Daniel L. Abbott, Pollock, Vande Sande & Priddy and Stanley B. Green as Amici Curiae for Defendant and Appellant.

Carl R. Brown, Brown, Martin & Haller and Brown, Martin, Haller & Meador for Plaintiff and Respondent.

**OPINION**

**STANIFORTH, J.**—William B. Marty, Jr., appeals a judgment awarding Cubic Corporation $34,102 for Marty's breach of an invention agreement signed when he began his employment with Cubic, awarding the patent to

the invention to Cubic and enjoining Marty from exploiting any rights under the patent or using or disclosing Cubic's confidential information to others.

## FACTS

When Marty became a Cubic employee in December 1976, he signed an invention and secrecy agreement (hereafter the Agreement) which provided in pertinent part that the employee agreed: "To promptly disclose to Company all ideas, processes, inventions, improvements, developments and discoveries coming within the scope of Company's business or related to Company's products or to any research, design experimental or production work carried on by Company, or to any problems specifically assigned to Employee, conceived alone or with others during this employment, and whether or not conceived during regular working hours. All such ideas, processes, trademarks, inventions, improvements, developments and discoveries shall be the sole and exclusive property of Company, and Employee assigns and hereby agrees to assign his entire right, title and interest in and to the same to Company."

The agreement also provided the employee would cooperate in obtaining a patent on any such inventions and would not disclose any of Cubic's secret inventions or processes and would not remove any Cubic records, files, drawings, documents or equipment from Cubic without prior written consent. Under the agreement, Cubic promised to pay all expenses in connection with obtaining a patent, pay the employee a $75 cash bonus upon the employee's execution of the patent application and an additional $75 if a patent was obtained.

In mid-May 1977, Marty came up with an idea for an electronic warfare simulator (EWS), a device for training pilots in electronic warfare. Marty's invention had advantages over current training methods which involved the use of very expensive, security-risky, mimic radars. He developed a block diagram in May 1977 and in June 1977 a manuscript describing his invention.

He showed both the diagram and manuscript to Minton Kronkhite of Cubic, representing it might be a new product which Cubic could add to its product for training pilots, the ACMR (air combat maneuvering range).[1] Cubic had had plans to add electronic warfare training to its ACMR but had not yet developed it at the time of Marty's invention. Kronkhite thought Marty's invention was a good idea and passed along the manuscript to Hubert Kohnen, another Cubic employee involved with the ACMR. Kohnen

---

[1]The name of the ACMR has been changed to TACTS (tactical aircrew combat training system).

also thought the idea was good. He assumed it was another product for the ACMR since Marty had suggested his invention responded to some of the things Kohnen had been talking about. Kohnen made some technical comments on the manuscript. At trial, Marty testified these technical issues were all addressed in the manuscript.

Cubic funded an internal project to study Marty's invention. Marty used a Cubic computer programmer to help design necessary circuitry. Marty's background in microprocessors was weak.

Based on the developed invention, Cubic submitted a proposal to the Navy for Marty's invention under Kohnen's name. Kohnen told Marty if they got a program from the Navy, Marty would be made the program manager. Cubic did get a government program to study Marty's invention and Marty was made program manager. Marty was also given a more than average raise.

In June 1978, Marty, without telling Cubic, applied for a patent on his invention. The patent was issued in December 1979. Marty's patent attorney forwarded a copy of the patent to Cubic and offered to discuss giving Cubic a license under the patent. Cubic took the position the patent belonged to them under the Agreement Marty had signed. Cubic offered to reimburse Marty's expenses in obtaining the patent if he assigned the patent to Cubic. Marty refused. Cubic told Marty his continued employment at Cubic was contingent on his assigning the patent. Marty continued to refuse and was terminated from his employment at Cubic in early 1980.

Cubic filed a complaint against Marty seeking declaratory relief as to ownership of the patent and alleging breach of contract, confidential relationship and trust, interference with prospective economic advantage and specific enforcement of the secrecy and invention agreement. Marty cross-complained for wrongful discharge, breach of contract, fraudulent misrepresentation, breach of confidential disclosure, copyright infringement, defamation and injunction.

Cubic made a motion for summary adjudication on whether the Agreement covered Marty's invention. Judge Lewis, after granting a continuance to allow Marty further discovery, granted Cubic's motion, finding the Agreement was clear in its terms and if valid, then the entire invention and patent came within the Agreement.

Marty filed an amended cross-complaint. Cubic made a motion to strike Marty's amended cross-complaint, contending it was an attempt to circumvent Judge Lewis' summary judgment order. Judge Butler, who heard the

motion, struck Marty's causes of actions for declaratory relief and mandatory injunction.

The case proceeded to trial without a jury. Marty defended on the basis the Agreement was an unenforceable adhesion contract and violated certain Labor Code provisions. Marty also sought to defend on the basis of estoppel and waiver, but such defenses were not allowed as impermissibly raising new matter.

The trial court awarded the patent to Cubic and $34,102 in damages resulting from a government withhold on a Cubic contract (subject to a credit to Marty if and when the amount was recovered from the government). The court also enjoined Marty from exploiting any rights under the patent and from using or disclosing to others confidential information owned by Cubic in specific documents.

## DISCUSSION

### I

■ Marty contends the summary judgment order was procedurally improper because it purported to decide an issue different from that presented by the motion.

Cubic phrased its summary judgment motion in terms of whether the Agreement "*covered*" Marty's invention. The summary judgment order stated the Agreement "*conveys* by its terms the entire right, title and interest" in the invention to Cubic. (Italics added.)

Marty contends this change was prejudicial to his defense. However, a review of the trial indicates the trial judge interpreted the summary judgment order as determining whether the Agreement *applied* to Marty's invention but not the issue of ownership. Thus, even if the summary judgment order technically decided a different issue than that raised in the motion, Marty suffered no prejudice since the trial court interpreted the order as Marty contends it ought to have been framed.[2]

---

[2]The trial court stated: "[I]t is the court's conclusion that the purport of Judge Lewis' ruling on a motion for partial summary judgment or to adjudicate certain facts, the purport of his ruling is that the question of whether the contracts or contract, I think it is the '76 assignment of invention agreement, whether that applied to the invention here, the patent in this case. That issue has been resolved for the plaintiff and against the defendant. In other words, the answer to that question is, yes, it does apply. [¶] What the ruling did not cover, however, is the issue of ownership. And the court is satisfied that that issue is still a factual issue which must be tried by the court as I have indicated."

■ Marty also argues the summary adjudication was improper because there were disputed factual issues as to whether the invention came within the Agreement.

While it is true the proffered evidence indicated Cubic did not produce a product with electronic warfare training capacities, that in particular the ACMR did not have electronic warfare training capacities and that Marty's invention did not necessarily have to be embodied in the ACMR system, the proffered evidence also indicted Marty presented the invention to Cubic as something to enhance Cubic's ACMR, the invention was designed to function with and was dependent upon the ACMR and the patent application stated the "preferred embodiment" of the invention was the ACMR. Thus, while there was evidence suggesting Marty's invention did not necessarily have to be tied to Cubic's ACMR, it was undisputed that it was, in fact, so related. The court did not err in granting summary adjudication on the issue whether the invention came within the scope of the Agreement.

Marty also contends the summary adjudication was improper because the court considered a declaration by Marlyn Hicks which contained matters not within his personal knowledge.

■ Under Code of Civil Procedure section 437c, subdivision (b), an evidentiary objection not made at the summary adjudication hearing is deemed waived. Marty here failed to object to the Hicks' declaration and therefore his objection is deemed waived.

## II

■ Marty contends Judge Butler improperly dismissed two of his causes of action in his first amended cross-complaint because Judge Butler erroneously misinterpreted the summary judgment order as determining the issue of ownership of the patent.

Judge Butler's order struck Marty's causes of action for declaratory relief and a mandatory injunction in his first amended cross-complaint. In these causes of action, Marty sought to plead his invention did not come within the scope of the Agreement and therefore Cubic's cloud upon his patent should be removed. These matters were resolved by the summary adjudication, i.e., that the invention came within the scope of the Agreement. Other issues which were raised by these causes of action, e.g., whether the Agreement was valid and enforceable, was an adhesion contract, etc., were not affected by Judge Butler's order; these issues remained as affirmative defenses to Cubic's action and were in fact litigated.

No reversal is required on this ground.

### III

■ Marty contends the Agreement was not specifically enforceable because there was inadequate consideration to support a promise to convey the invention to Cubic.

Civil Code section 3391 provides in pertinent part: "Specific performance cannot be enforced against a party to a contract in any of the following cases:

"1. If he has not received an adequate consideration for the contract;

"2. If it is not, as to him, just and reasonable. . . ."

The adequacy of consideration is to be determined in light of the conditions existing at the time a contract is made. (*Crail* v. *Blakely* (1973) 8 Cal.3d 744, 753 [106 Cal.Rptr. 187, 505 P.2d 1027].) A trial court's finding the consideration was adequate will not be disturbed on appeal if it is supported by substantial evidence. (*Loeb* v. *Wilson* (1967) 253 Cal.App.2d 383, 388 [61 Cal.Rptr. 377].)

Marty argues the only consideration for the Agreement was a "token" bonus of $150. He argues his employment could not have been the consideration for the Agreement because Cubic hired him before he signed the Agreement.

The evidence shows that on the Monday mornings when new employees were scheduled to begin working at Cubic, they attended an orientation session at which employee benefits were explained. The new hires completed insurance and medical forms as well as the secrecy and invention agreement. Cubic required all new employees to sign the secrecy and invention agreement.

The evidence also shows during the course of his employment, in part because of his invention, Marty was given a substantial raise in salary and made a program manager.

This evidence supports the trial court's conclusion the Agreement was a condition of employment and that the employment was adequate consideration for the Agreement.

Marty also seeks to avoid the Agreement by making a distinction between "inventive" and "non-inventive" employees. He cites cases involving *oral*

contracts to convey an invention. These cases are distinguishable from the instant case since they do not involve the interpretation of an express written contract. Moreover, the evidence suggests Marty was not strictly a "non-inventive" employee. He was originally hired as an "Electronics Engineer" and subsequently promoted to "Senior Engineer." Marty in his trial testimony conceded some engineers at Cubic did design work. There also was evidence the job description for senior engineers included the ability to do design work. Further, Marty presented his invention to Cubic as a new product for Cubic, something which could be added to their ACMR. Marty was made program manager on the government contract to study (and refine the design of) his invention. While Marty may not have been a "design" engineer at Cubic, the scope of his employment did not preclude design work and in fact, Marty perceived it as encompassing design work since he presented his invention to Cubic as a design for Cubic without expressing any reservations of rights or indications that the invention was not a part of his Cubic employment.

## IV

■ Marty contends the Agreement is an unconscionable adhesion contract and therefore unenforceable.

■ An adhesion contract is a standardized contract written entirely by a party with superior bargaining power, leaving the weaker party in a "take-it-or-leave-it" position. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168]; *Ponder* v. *Blue Cross of Southern California* (1983) 145 Cal.App.3d 709, 719 [193 Cal.Rptr. 632].) In the characteristic adhesion contract, the stronger party has drafted the contract and given the weaker party no opportunity to negotiate its terms and the weaker party may have no realistic opportunity to look elsewhere for a more favorable contract, but must adhere to the standardized agreement. (See *Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 711 [131 Cal.Rptr. 882, 552 P.2d 1178].)

The determination that a contract is adhesive is only "the beginning and not the end of the analysis insofar as enforceability of its terms is concerned." (*Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 357 [133 Cal.Rptr. 775, 84 A.L.R.3d 343].) ■ A contract of adhesion can be fully enforced according to its terms unless some other factors exist, such as the oppressive or "unconscionable" provision. (*Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 819-820 [171 Cal.Rptr. 604, 623 P.2d 165].) Unconscionability includes "'. . . an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" (*Chretian* v. *Donald L. Bren Co.* (1984) 151

Cal.App.3d 385, 389 [198 Cal.Rptr. 523].) As the Supreme Court stated in *Graham* v. *Scissor-Tail, Inc., supra,* 28 Cal.3d 807, 820: "Generally speaking, there are two judicially imposed limitations on the enforcement of adhesion contracts or provisions thereof. The first is that such a contract or provision which does not fall within the reasonable expectations of the weaker or 'adhering' party will not be enforced against him. The second— a principle of equity applicable to all contracts generally—is that a contract or provision, even if consistent with the reasonable expectations of the parties, will be denied enforcement if, considered in its context, it is unduly oppressive or 'unconscionable.'" (Citations and fns. omitted.)

Here it is clear the Agreement was adhesive. Cubic drafted the contract, it gave its employees no opportunity to negotiate the terms, but rather offered it on a take-it-or-leave-it basis as a condition of employment at Cubic. There was evidence presented that such agreements are required on an industry-wide basis because the government requires defense contractors to give it title or a license in any patents conceived or reduced to practice during the course of performance of government contracts.

Marty claims the Agreement is unconscionable as applied to his invention. He asserts Cubic had no legitimate interest in the invention because Marty was not hired or paid as an inventor, and even if Cubic had a legitimate interest in the invention, the Agreement was unconscionable because of the "unreasonably low compensation for the Invention." However, as discussed in III, *ante,* Marty's employment encompassed inventive duties. He was adequately compensated through the terms of his employment.

## V

Marty next contends the Agreement is unenforceable under Labor Code sections 2870 to 2872.[3]

---

[3]Cubic argues the trial court impermissibly applied the Labor Code provisions to Marty's invention.

As a rule, statutes are presumed to be prospective only in their operation unless a contrary intent is expressly stated or necessarily implied. (*McBarron* v. *Kimball* (1962) 210 Cal.App.2d 218, 220 [26 Cal.Rptr. 379]; *City of Sausalito* v. *County of Marin* (1970) 12 Cal.App.3d 550, 557 [90 Cal.Rptr. 843].)

While we do not need to reach the issue in the instant case since Marty's invention fails to come within the scope of the protection provided by section 2870, we note the Legislature has stated "Any provision which purports to apply to such an invention is to that extent against the public policy of this state and is to that extent void and unenforceable." (Lab. Code, § 2870.) The Legislature has also provided such an agreement cannot be made a condition of continued employment. (Lab. Code, § 2871.) Under these circumstances, we believe the Legislature intended the Labor Code provisions to have retroactive effect to the particular assignment contracts entered into before the effective date of the provisions on the grounds that such contracts are unconscionable and against public policy.

Under Labor Code section 2870, the Legislature has provided that an employer is not entitled to an assignment of an employee's invention even when there is an employment agreement to the contrary if the following conditions are present: (1) the employee did not use any "equipment, supplies, facility, or trade secret information of the employer"; *and* (2) the invention "was developed entirely on the employee's own time"; *and* (3) the invention does not relate to the employer's business, *or* to the employer's "actual or demonstrably anticipated research or development," *or* "does not result from any work performed by the employee for the employer."

The Legislature has stated an agreement to assign an invention which falls within Labor Code section 2870 cannot be made a condition of employment or continued employment. (Lab. Code, § 2871.) However, an employer may require full disclosure of employee inventions made during the term of his or her employment and may require the employee to assign title to patents and inventions to the federal government if the government has required such an assignment in a contract with the employer. (*Ibid.*)

The employee bears the burden of establishing his invention comes within Labor Code section 2870. (Lab. Code, § 2872.)

■ The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) The court looks first to the language of the statute, attempting to give effect to the usual, ordinary import of that language and seeking to avoid making any language mere surplusage. Significance if possible should be attributed to every word, phrase, sentence and part of an act in pursuance of the legislative purpose. (*Ibid.*) The various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) The provision must be given a reasonable and common sense interpretation consistent with the apparent purpose and intention of the Legislature, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity. (*United Business Com.* v. *City of San Diego* (1979) 91 Cal.App.3d 156, 170 [154 Cal.Rptr. 263]; *City of Costa Mesa* v. *McKenzie* (1973) 30 Cal.App.3d 763, 770 [106 Cal.Rptr. 569].)

■ Marty contends Cubic's Agreement violates the Labor Code provision because it encompasses all inventions which come "within the scope of [Cubic's] business" or are "related to" Cubic's products, research, design, experimental or production work or to any problems specifically as-

signed to the employee by Cubic. Marty argues under the Labor Code provision "the employer is not entitled to the invention unless it 'resulted from' work performed by the employee, *even if* the invention, in general, relates to the 'business of the employer' . . . ."

Marty has misconstrued the Labor Code provision. Under section 2870, providing the other conditions are met, an employer is not entitled to an employee's invention "(a) which does not relate (1) to the business of the employer or (2) to the employer's actual or demonstrably anticipated research or development, or (b) which does not result from any work performed by the employee for the employer." Thus, section 2870 permits enforcement of employer assignment agreements for inventions which relate to the "actual" or "demonstrably anticipated" business of the employer or which resulted from work performed by the employee for the employer. The section does not, as Marty contends, use the phrases "even if" and "unless," i.e., language that the employer is not entitled to the employee's invention "even if" it relates to the employer's business "unless" the invention resulted from work performed by the employee for the employer. The Legislature used the disjunctive "or"—if either of the two conditions (scope of business or work otherwise performed by the employee for the employer) are not met, then section 2870 does cover the invention.

The interpretation Marty urges would render part of the statute surplusage. Under Marty's interpretation, the language relating to the scope of the employer's business becomes irrelevant; so long as the invention did not result from work the employee performed for the employer (and section 2870's other conditions are met), the invention belongs to the employee, the scope of the employer's business being irrelevant. To avoid rendering the language mere surplusage, we construe the statutory language to cover both the situation where the invention comes within the scope of the employer's business (actual or demonstrably anticipated) and the situation where the invention was not within the usual scope of the employer's business but resulted from work the employee did for the employer. If either situation is present, then the employer has a right to the invention under an assignment agreement.

## VI

Marty contends the trial court improperly applied section 2870 by determining the invention was embodied in the patent application rather than in his manuscript. The trial court concluded the manuscript did not embody the invention since it failed to include circuitry necessary to make the invention work in the real world. This circuitry was developed with the aid of a Cubic employee on Cubic time under a Cubic funded program.

Thus, the trial court concluded the invention did not come within Labor Code section 2870 because it was not "entirely developed on the employee's own time."

Even if we were to treat the manuscript as the invention for the purposes of the Labor Code provisions, we would conclude Marty failed to meet the requirements of section 2870.

While it is true he developed the manuscript entirely on his own time, it is also clear Marty's invention fell within the scope of Cubic's actual or demonstrably anticipated research and development and Marty was, in fact aware of that. Marty presented his manuscript to Cubic as something which would enhance Cubic's ACMR capabilities. He showed the manuscript to Cubic and stated it responded to issues which Cubic had raised. Cubic had had plans to add electronic warfare training to its ACMR since 1972 and had been specifically looking to add that capacity in 1976 and 1977.

Marty's actions indicated he considered the invention to fall within the scope of Cubic's business. He never told any Cubic personnel before the patent was issued that he believed the invention belonged to him; rather he consistently permitted Cubic personnel to believe the invention was for Cubic's benefit and was part of his employment at Cubic. He sought Cubic expertise on his idea, initially on the block diagram and later on the manuscript and further sought and accepted Cubic funding to refine the invention on company time.

Under these circumstances, it appears Marty's invention as represented in the manuscript fails to meet a necessary requirement of section 2870, i.e., that it not be related to his employer's business. This conclusion is fully supported by substantial evidence and was, moreover, the subject of Judge Lewis' summary adjudication.

While we need not decide the issues, we note there is substantial evidence to support the trial court's conclusion Marty did not develop the invention entirely on his own time since he used Cubic personnel and funding to add circuitry which was necessary to make his invention work. While Marty argues he could have developed this circuitry on his own, the fact remains that he did not. Moreover, we do not think the Labor Code provisions were intended to award an invention to an employee who presents an invention to an employer, represents the invention is for the employer's benefit, actively seeks and obtains company funding to refine his invention, uses company time and funding to develop his invention while all the time secretly intending to take out a patent on the invention for himself.

## VII

Marty contends Cubic breached an implied covenant of good faith and fair dealing by discouraging submission of and consideration of Marty's invention under Cubic's employee suggestion program.

Under the program, an employee was entitled to an award of "10% of the anticipated first year . . . net profit, with a possibility of obtaining an additional award in special circumstances at the direction of the vice president." The program also provided for an award of 5 percent of the increased net profits in the second year with a possibility of a special award for an additional amount.

The law implies in every contract a covenant of good faith and fair dealing in addition to the duties imposed upon the parties by the express terms of the contract. (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, 768 [206 Cal.Rptr. 354, 686 P.2d 1158].) "The implied promise requires each contracting party to refrain from doing anything to impair the right of the other to receive the benefits of the agreement. [Citations.]" (*Betts* v. *Allstate Ins. Co.* (1984) 154 Cal.App.3d 688, 705 [201 Cal.Rptr. 528]; *Cleary* v. *American Airlines, Inc.* (1980) 111 Cal.App.3d 443, 455 [168 Cal.Rptr. 115].)

An action for breach of the implied covenant of good faith and fair dealing sounds in both contract and tort with contract damages traditionally available. (See *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co., supra,* 36 Cal.3d 752, 768.) The tort remedy has been held available in the context of an employment contract. (*Khanna* v. *Microdata Corp.* (1985) 170 Cal.App.3d 250 [215 Cal.Rptr. 860]; *Cleary* v. *American Airlines, supra,* 111 Cal.App.3d 443; see also *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co., supra,* 36 Cal.3d 752, 769, fn. 6; *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 179, fn. 12 [164 Cal.Rptr. 839, 610 P.2d 1330].) The covenant of good faith and fair dealing has been found to include the right of an employee to benefit from an employer's policies, rules and regulations adopted for the employee's benefit. (*Rulon-Miller* v. *International Business Machines Corp.* (1984) 162 Cal.App.3d 241 [208 Cal.Rptr. 524].) The employee bears the burden of establishing breach of the covenant. (See *Crosier* v. *United Parcel Service, Inc.* (1983) 150 Cal.App.3d 1132, 1138 [198 Cal.Rptr. 361].)

The evidence at trial established Cubic's suggestion program was not intended to cover inventions by its engineers. Compensation for those inventions was provided by the engineer's salary and through the patent program. The suggestion program was intended to reward employee sug-

gestions in the noncreative side of the business, e.g., changing forms to require them to take less time to fill out. Marty presented no evidence rebutting this intent.

Under these circumstances, the trial court was entitled to conclude Cubic acted in good faith and fairly dealt with Marty when it did not submit or consider his invention as part of the employee suggestion program.

## VIII

Marty contends the trial court improperly excluded evidence.

Marty first objects to the court's ruling as to testimony by Richard Bullock. Marty complains the court precluded Bullock's testimony that the invention was not directly related to the ACMR, but could be used separately. The court made no such ruling. The court ruled only that Bullock could not testify as an expert but only as a fact witness and could in that capacity testify about the relationship between the invention and the ACMR.

Marty next objects to the exclusion of proffered evidence of the United States Air Force's request for proposals for an On Board Electronic Warfare Simulation System (OBEWS). Marty argued the evidence was relevant to show his invention had a "stand-alone" capacity separate from the ACMR. The trial court noted Marty had already presented evidence the invention had a stand-alone capacity. The court ruled that under Evidence Code section 352, the probative value of the OBEWS testimony was outweighed by the fact the testimony would consume an undue amount of time. This ruling was well within the trial court's discretion.

Marty contends the trial court erroneously excluded the testimony of his patent attorney Henri Charmasson who was proffered as an expert on patent law who would testify on the nature of the invention and the relationship between the invention and the patent. Marty complains Cubic was allowed to present testimony on patent law concepts (e.g., "conception" and "reduction to practice"), which define the term "invention," while he was not. However, at trial, Marty's counsel stated Charmasson's testimony was not being proffered as to what the term "invention" meant within the scope of the Labor Code provisions. Additionally, the trial court encouraged both parties to submit briefs on patent law concepts. Marty did not avail himself of this opportunity.

Marty also proffered Charmasson's testimony as to the nature of the invention, in particular that the invention had a stand-alone capacity, and as to Charmasson's preparation of drawings for the patent. The trial court

ruled Charmasson's testimony on other applications of Marty's invention was not relevant since the case before it did not involve a patent infringement issue and the proffered testimony was not relevant to the issues before the court, e.g., whether Marty used Cubic equipment or whether the invention was within the scope of Cubic's business. The trial court acted within its discretion in excluding this testimony. Whether the invention had other applications beyond the ACMR was irrelevant to the issue of ownership of the patent under the Agreement and the Labor Code provisions.

As to Marty's contention that Charmasson would have testified he prepared the patent application drawings, this evidence came in by means of a stipulation.

## IX

 Marty also contends the court erred in granting injunctive relief to Cubic. The trial court restrained Marty from "seeking to exploit any rights under U.S. Patent No. 4,176,468, either directly or through third parties" and enjoined him from "using or disclosing to others any confidential information arrived at by [him] in Cubic Proposal Nos. 4-77065, 4-77065-1; P-78081; and P-79060."

Marty argues the injunction violates 28 United States Code Annotated section 1498 which provides that the patent owner can bring an action against the government for a reasonable royalty. However, the instant case determined the patent did not belong to Marty and thus this argument has no merit.

We conclude the injunction directs Marty to recognize Cubic's ownership of the patent to the invention and thus to not exploit it as if it were his own or to infringe on the patent which does not belong to him. In this context, the injunction was clearly appropriate.

Marty also contends the injunction against his using or disclosing certain information is "factually unclear" since the injunction fails to specify what "confidential information" is contained in the Cubic proposals. The court specified five documents which were in evidence. Each of these documents contained a Cubic proprietary claim. Under the circumstances, we do not believe the trial court's order is unduly vague. Moreover, Marty has failed to make any citation to the record where he objected to the scope of such an injunction on the grounds of vagueness, an issue most properly addressed the trial court who heard the evidence.

## X

■ Marty also contends the court erred in awarding damages of $34,102, which represents a government withhold on a Cubic design contract. The judgment provided Marty would be entitled to a credit if and when the government withhold was lifted. After the judgment, the government apparently lifted the withhold. Marty contends the issue is not moot because he is still liable for the interest on the $34,102 from the time of the withhold (Nov. 5, 1981) to the time when the government made payment.

In arguing the court erred, Marty points to the government's letter informing Cubic of the withhold. The letter states the withhold was due to Cubic's failure to file a required invention disclosure form; it does not specifically mention Marty's invention or the litigation. However, there was other evidence presented which indicated the withhold was prompted by Marty's assertion of ownership in the invention and that the government was continuing to withhold the money pending resolution of the instant litigation. Based on this evidence, the court could reasonably conclude Marty's wrongful assertion of ownership caused the government withhold and therefore he was liable for that sum unless and until the government paid it to Cubic.

The judgment is affirmed.

Kremer, P. J., and Benke, J.,* concurred.

A petition for a rehearing was denied September 23, 1986, and appellant's petition for review by the Supreme Court was denied November 26, 1986. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.