In re Richard ROMANO and Antoinette
R. Romano, Debtors.

Bankruptcy No. 94–0283–BKC–3F3.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Oct. 27, 1994.

Albert H. Mickler, Jacksonville, FL, for debtors.

David E. Peterson, Orlando, FL, for California Federal.

Mamie Davis, Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This case is before the Court upon an Application for Fees and Expenses filed by the law firm of Lowndes, Drosdick, Doster, Kantor & Reed who represented creditor California Federal in this bankruptcy. California Federal also filed Claim Number 18 seeking attorney's fees and costs for bankruptcy in the amount of $8,316.89 for services rendered by Lowndes, Drosdick, Doster, Kantor & Reed in the bankruptcy to which Debtor objected. After hearing the evidence presented, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

The Debtors in this case, Richard and Antoinette Romano, executed a mortgage and promissory note to California Federal on October 27, 1989. The Romanos subsequently defaulted on the terms of the mortgage by failing to make required payments in February, 1991 and thereafter. As a result, California Federal accelerated the payments and retained attorneys to commence a foreclosure action on the property securing the note. Shortly thereafter, the Debtors filed their voluntary petition in bankruptcy. The court ultimately confirmed the Debtors' plan. However, the Debtors subsequently defaulted in their payments under that plan.

The Debtors filed a second petition in bankruptcy on January 24, 1994, which resulted in the instant case. California Federal retained the law firm of Lowndes, Drosdick, Kantor and Reed to represent it in the Debtor's bankruptcy case. As part of its Claim Number 18, California Federal seeks payment of its attorney fees and costs for being represented in the bankruptcy. The attorneys fees and costs sought total $8,316.89. California Federal bases its claim for attorneys fees on a provision in the mortgage agreement signed by the Debtor. Debtor has objected to this claim, maintaining that neither the mortgage, nor the promissory note, contain a provision specifically awarding attorneys fees in bankruptcy. The interpretation of this note and mortgage is the central issue in this case.

The provision in dispute in the mortgage explains that if any default occurs, in order to protect its security, California Federal may be required to advance certain costs and fees. The contract makes the mortgagee responsible for any of these costs and fees incurred by the mortgagor, which would be added to the security interest of the property. Specifically, the disputed language in the mortgage is as follows:

7. *Protection of Lender's Rights in the Property; Mortgage Insurance.* If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorney's fees and entering on the Property to make repairs.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon note from Lender to Borrower requesting payment.

Debtors contend that a Chapter 13 bankruptcy case does not affect California Federal's rights in the property, nor does it affect the value of the property, and so would not be covered under this provision. California Federal argues the contrary position. It is

up to this Court to interpret this provision of the mortgage.

## CONCLUSIONS OF LAW

 The "American Rule" requires each litigant to bear the cost of his or her own legal fees and expenses. The exception to this is by statute or if the parties agree otherwise. *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983); *Summit Valley Industries, Inc. v. Local 112, United Brotherhood of Carpenters and Joiners*, 456 U.S. 717, 102 S.Ct. 2112, 72 L.Ed.2d 511 (1982). Section 506(b)[1] of the Bankruptcy Code does represent a statutory exception of sorts to the American Rule. It has been interpreted as giving the Bankruptcy Court the jurisdiction to award attorney's fees: 1) when the creditor demonstrates that the claim is over-secured, 2) when the agreement provides for the award of fees and costs, and 3) when the fees and costs are reasonable. *In re David N. Rausch, Inc.*, 41 B.R. 833 (Bankr.D.S.D.1984); *In re Colvin*, 57 B.R. 299 (Bankr.D.Utah 1986); *In re Nordmann*, 56 B.R. 634 (Bankr.D.S.D.1986). The courts have repeatedly interpreted § 506(b) as providing for postpetition attorney's fees and costs to oversecured creditors, when the security agreement so provides.

As stated before, the central issue in this case is whether the mortgage agreement between the Debtor and California Federal provides for attorneys fees, which is a primary requirement under § 506(b). Several courts, including this one, have held that the contract in question must *expressly* provide for the awarding of attorney's fees to creditors in bankruptcy. " . . . Section 506(b) . . . restricts the right to recover attorneys' fees to only those creditors who have bargained and provided for such fees in the underlying agreement." *In re Charter Co.*, 63 B.R. 568, 570 (Bankr.M.D.Fla.1986) (Proctor, J.). *Longwell v. Banco Mortgage Co.*, 38 B.R. 709 (N.D. Ohio 1984). *Charter* was cited approvingly in *In re LaRoche*, 115 B.R. 93 (Bankr. N.D. Ohio 1990) where the court stated that

attorney's fees provisions must be express and bargained for by the parties. The court deemed it important that the provision adequately inform the person signing the agreement that he or she would be held responsible for the creditor's attorney's fees. The court held that the mortgage agreement in question was "bereft" of that kind of information. Additionally, courts have held that § 506(b) requires specificity in providing for attorneys' fees. *In re Schwartz*, 87 B.R. 41 (S.D.Ohio 1988), *aff'g* 77 B.R. 177 (Bankr. S.D. Ohio 1987).

Florida courts have always interpreted attorney's fees provisions in contracts very narrowly. In *Ohio Realty Inv. Corp. v. Southern Bank of West Palm Beach*, 300 So.2d 679 (1974), the Florida Supreme Court rejected the notion that a mortgage which provided for "reasonable attorney's fees" covered attorney's fees on appeal of the case. The court stated that there must be express language showing a "meeting of the minds" of the parties that attorney's fees on appeal would be included in the provision.

 It is an axiom of contract interpretation law that an ambiguous contract be interpreted against its drafter. "Any ambiguity resulting from the deliberate choice of language will be interpreted most strongly against the party who wrote it. . . . " *In re F.H. McGraw & Co.*, 473 F.2d 465 (3rd Cir. 1973). "Insofar as contract language may be deemed ambiguous, Florida law dictates that any ambiguity will be interpreted against the party who selected the language. Further, this principle of law is applicable to mortgages." *First Texas Sav. Ass'n v. Comprop Inv. Properties Ltd.*, 752 F.Supp. 1568, 1571 (M.D.Fla.1990), *citing Consolidated Dev. & Eng'g Corp. v. Ortega Co.*, 117 Fla. 438, 158 So. 94 (1934); *Rose v. Lurton Co.*, 111 Fla. 424, 149 So. 557 (1933). An instrument must be construed against its drafter or against the party who supplied the contract. *Advance Process Supply Co. v. Litton Indus. Credit Corp.*, 745 F.2d 1076 (7th Cir.1984);

---

1. 11 U.S.C. § 506(b) provides: "To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose."

*In re Kennedy Mortgage Co.,* 23 B.R. 466 (Bankr.D.N.J.1982); *Thomson McKinnon Sec. Inc. v. Harris,* 139 B.R. 267 (S.D.N.Y. 1992).

■ Furthermore, a mortgage can be termed an adhesion contract, since it is generally not bargained for; rather it is imposed on the mortgagor on a take it or leave it basis by the mortgagee. According to Black's Law Dictionary, the distinctive feature of an adhesion contract is that the weaker party has no realistic choice as to its terms, *(citing Cubic Corp. v. Marty,* 185 Cal.App.3d 438, 229 Cal.Rptr. 828 (1986)). The demand to interpret ambiguous language against the maker of an adhesion contract becomes even more imperative. *In re Mako, Inc.,* 127 B.R. 474 (Bankr.E.D.Okla. 1991); *Hodgins v. American Mut. Liab. Ins. Co.,* 261 F.Supp. 129 (E.D.Pa.1966). In fact, by its very nature, an adhesion contract cannot meet one of the requirements of § 506(b) imposed by some courts; namely that provisions for attorneys fees be bargained for by the parties.

■ Upon examination of the mortgage in this case, particularly paragraph 7, the Court finds that the contract is entirely ambiguous as to whether attorney's fees are provided for in a bankruptcy case involving the mortgagee. The provision in question could be read several different ways. The Court feels that it could be interpreted as only paying attorney's fees of those people claiming a superior lien on the property, because it is in the sentence which refers "to paying sums secured by a lien which has priority over this Security Instrument. . . ." It could be read as only paying the attorneys fees of third parties, not the Lender itself.

■ Furthermore, the provision in the mortgage refers to a "legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy . . .)" which would trigger the award of attorney's fees. This court does not be-

lieve that a proceeding in bankruptcy affects the Lender's rights in the property. A debtor's bankruptcy case does not have any effect on a Lender's rights in the collateral. The debtor cannot modify the mortgage holder's rights with respect to the collateral. The mortgage holder retains his full panoply of rights, including foreclosure, in the event that the Debtor defaults in his Chapter 13 plan. Accordingly, a mortgage clause that allows the recovery of attorney's fees if the "property rights" of the mortgage holder are affected is inapplicable in a Chapter 13 case. Hence, even if this provision were not ambiguous as to whether it awards attorney's fees in bankruptcy, this Court does not believe that a bankruptcy case is a proceeding that "significantly affects Lender's rights in the property" that would make this provision applicable.

In regards to its ambiguity, the provision in this case is the proverbial "close call." It could be read several different ways. The bottom line is that it is impossible to tell exactly what the parties intended in this case. The contract is inherently ambiguous. Therefore, the Court must fall back on the axiom of contract law and interpret this ambiguous contract against the drafter or supplier of the contract.

California Federal supplied the contract in this case. If it had wanted attorney's fees awarded in the event the mortgagee filed for bankruptcy, it would have been a simple procedure to clearly draft that language into the contract. In this case, it chose not to do that, and left us instead, with an ambiguous contract. Provisions for attorney's fees must be specific and express. This provision is neither.

■ Therefore, the Court is forced to interpret the contract against California Federal and find that there is no provision in this note or mortgage for awarding bankruptcy attorney's fees to the Lender in the event the Borrower files a Chapter 13 bankruptcy petition.[2]

---

**2.** Since the Court has found that there is no provision for attorney's fees in this note or mortgage, it does not need to discuss the other two prongs of the three part test, namely whether the creditor is oversecured and whether the fees are reasonable. However, the Court notes that this creditor seeks over $8,000 in attorneys fees and expenses, including over $1,000 for expenses alone, for such things as photocopies and long distance telephone charges. If the Court had

A separate final order will be entered in accordance with the foregoing.

### ORDER ON DEBTOR'S OBJECTION TO CLAIM 18

Pursuant to the Findings of Fact and Conclusions of Law entered in this case, it is **ORDERED:**

Debtor's Objection to Claim Number 18 of California Federal as to bankruptcy attorney's fees is **SUSTAINED.**

**DONE AND ORDERED.**

awarded fees in this case, by no stretch of the imagination could that be termed a reasonable fee for a straightforward Chapter 13 case, in which the creditor's attorneys did nothing more than file a proof of claim, file a motion for adequate protection, and object to the plan. In short, this fee request is laughable.